OSWEGO GENERAL TERM, May, 1849.  *C. Gray, Pratt, Gridley and Allen,* Justices.

COON *vs.* THE SYRACUSE AND UTICA RAIL-ROAD COMPANY.

A principal is not liable to one agent or servant, for an injury sustained by him in consequence of the misfeasance or negligence of another agent or servant of the same principal, while engaged in the same general business or employment.

Accordingly *Held*, that a person in the employ of a rail-road company, as a trackman, could not maintain an action against the company to recover damages for injuries sustained in consequence of being run over by a train of cars belonging to the defendants.

The rule of *respondeat superior* does not spring directly from principles of natural justice and equity, except as those principles grow out of, and are connected with, principles of expediency and public policy.  *Per* PRATT, J.

THIS was an action on the case, tried at the Oneida circuit, in September, 1847, before Justice PRATT.  The plaintiff claimed to recover damages for an injury inflicted on his person by being run over by a certain train of cars called a stake train, upon the defendants' rail-road, through the alledged carelessness of the defendants.  The defendants pleaded the general issue.  It appeared in evidence that at the time of the injury the plaintiff was in the defendants' employ, as a trackman, and had been in their employ five or six years.  His duty was to pass over the track, on a hand car, upon a specified route, after the passenger trains, and to examine the track, to fasten down loose joints, report cases of broken rails, repair fences, and drive off cattle.  On the night of the accident there met at Green's corners, on the line of the defendants' road, the passenger train going east, the passenger train going west, and the stake train going west.  The passenger train from the east went into a side track, or turn-out, at that place, first; and then the passenger train going west passed the side track.  The passenger train from the east then backed on to the main track, and went on west, the plaintiff following it upon a hand car.  The passenger train going east then backed into the side track and let

the stake train pass on to the west, upon the main track; and lastly the passenger train going east came on to the main track and proceeded towards Utica. It was a little after dark when the stake train passed Green's corners. The accident occurred about a mile and an half west of Green's corners, while the stake train was proceeding at its usual speed. It carried no light; neither had the plaintiff any light with him, upon his hand car. There was a bed of coals in the ash-pan, beneath the engine. They made a light, which could sometimes be seen for a considerable distance. It was proved that stake trains did not usually have any other light; but that the trackmen generally carried a light, upon their hand cars. One witness, a trackman, testified that he always carried a light, in the night, excepting when it was moonlight, and that it would be difficult to repair the track without a light; that he carried it in the back of the hand car, so that trains behind him could see it, and that he might have it to fix the track with; that when going on a hand car, at the usual speed, a person could not hear a train coming behind him. This witness also stated that his instructions were to look out for the engines, and keep out of the way; that the plaintiff usually followed the passenger train going east, at evening, from the Blackman road to Green's corners, where the passenger trains usually met, and then followed the train from the east back to the Blackman road. Another witness swore that all the men employed in this business, by the defendants, carried a light, in the night, so far as he knew; and that their work could not be properly done without a light; that he was instructed to keep out of the way of the trains. J. Higgins, who had charge of the road from Rome to Blackman's corners, testified that he employed the plaintiff, for the company, at $18 per month, and instructed him to run from the Blackman road to Green's corners, immediately after the train; that he was to run through if he could; and if he met the train going west it was his duty to run to the corners; that on the night in question the witness cautioned Vedder, the engineer upon the stake train, to be careful, as Haskins, one of the trackmen, was ahead and had no light; that he did not

then think of the plaintiff, supposing he would be at the corners, as that was the place for him; that Vedder had been an engineer upon the road several years, and was a careful and capable man; that the hand cars generally carried a light after dark, but that the plaintiff never asked for one. Several other trackmen testified that they were in the habit of carrying lights. The plaintiff having rested, the defendants' counsel moved for a nonsuit, on the following grounds. 1st. That the plaintiff, when he entered the service of the defendants, took upon himself all the risks incident to his employment; that the hazard of being run over by the trains was one of those risks, and that therefore the defendants were not liable to the plaintiff for the injuries complained of. 2d. That the plaintiff had not proved either of the acts of negligence charged in his declaration against the defendants, and therefore he was not entitled to recover. 3d. That the plaintiff had not proved that the defendants were guilty of any negligence; but that on the contrary it appeared that the injury which the plaintiff complained of was occasioned by his own gross carelessness, and that therefore he was not entitled to recover. 4th. That the injuries complained of by the plaintiff were occasioned by a mere accident, unavoidable by the defendants, and that therefore they were not liable.

The court granted the motion for a nonsuit, and the plaintiff's counsel excepted. And a bill of exceptions having been filed, he moved for a new trial.

*T. Jenkins & H. A. Foster*, for the plaintiff. I. The running of the stake train in the night time, without a light, and following so soon after the passenger train, was an act of gross carelessness. It was known that the whole route was divided into sections, and that the passenger train on each section was followed by a person charged with the duty of examining the track, and that these hand cars could not keep up with the passenger train. No one could have expected the return of the stake train in the night. The lives of all the hand-car men were put at great hazard by this act. II. The negligent running of the stake train was an act of the *corporation*. The

corporation acts through its *agents.* The stake train left the principal depot in Utica and passed the station at Rome. At both of these places men having the general superintendence of the company's business were stationed. The *corporation* is therefore chargeable with the carelessness of running the stake train in the night time, without a light. At any rate there was enough proof upon this subject to go to the jury. (*Angell & Ames on Corp.* 250, § 10; 328, § 9; 234, § 7.) III. If this negligence was an act of the *corporation,* the *corporation,* upon the plainest principles, is liable. The case therefore does not fall in any respect within the reasons contained in the 4th Metcalf, 49. (1.) The negligence in that case could not be regarded as an act of the corporation : for the switch tender acted in disobedience to the instructions of the corporation; not so here. (6 *Hill,* 592. 21 *Wend.* 615. 3 *Mees. & Wels.* 1.) (2.) The switch tender and the engineer (if both had done their duty) were contributing to the immediate effect of one and the same object, to wit, the progress of the train which the engineer had in charge—not so here. The plaintiff had no connection with the stake train. His duty required him to follow the passenger train : no one was required to follow the stake train.

*S. T. Fairchild,* for the defendants. The declaration alledges that it was the duty of the defendants to *take care* that no train followed the plaintiff so near as to be in any danger of running over him, and *to furnish* their night trains with light sufficient to enable the engineers in charge to see forward of them, and thereby be enabled to prevent accidents ; and as *the foundation of the action* alledges a breach of those duties on the part of the defendants. I. The plaintiff did not prove that any such duties rested on the defendants; nor that they were negligent in that or in any other respect. But his counsel claimed that the cause should be submitted to the jury upon the allegations in the declaration, without proof. II. The defendants exercised ordinary care. Their stake trains never carried lights, and they ran at all hours, and irregularly. They

Coon v. The Utica and Syracuse R. R. Co.

were the only trains that did not run at stated times. These facts were well known to the plaintiff at the time he re-engaged in the defendants' service; for he had been in the same service for a long time previous. III. The defendant was guilty of gross negligence and breach of duty, in consequence of which alone the accident occurred. (*Hartfield* v. *Roper*, 21 *Wend.* 618. *Dygert* v. *Bradley*, 8 *Id.* 469. *Rathbone* v. *Payne*, 19 *Id.* 401.) (1.) It was his duty to carry a light, so that he might see to do his work, and that he might be seen by the engineers. He had none. (*Brownell* v. *Flagler*, 5 *Hill*, 282. *Harlow* v. *Humaston*, 6 *Cowen*, 196. *Lane* v. *Crombie*, 12 *Pick.* 177.) (2.) It was his duty, after the train going west had passed him, to run down to the branch at Green's corners; but instead of doing so he neglected all that part of the track between him and the corners, put his car on the track and followed the train west towards his home, without a light—a nuisance on the road. IV. Admitting that the injury to the plaintiff was occasioned by the negligence of some person other than the plaintiff, it was the negligence of a fellow servant in the same general employment; for which the defendants are not liable. (*Story on Agency*, § 453. *Farwell* v. *Boston & Worcester R. R. Co.* 4 *Met.* 49. *Brown* v. *Maxwell*, 6 *Hill*, 592. *Priestly* v. *Fowler*, 3 *Mees. & Wels.* 1. *Murray* v. *South Car. R. R. Co.* 1 *McMul.* 385.) The plaintiff assumed the risk of this negligence, as well as all other risks incident to the business, when he entered into the service of the defendants. V. If the cause had been submitted to the jury, and they had found for the plaintiff, the court would have ordered a new trial, on the ground that the plaintiff proved no negligence on the part of the defendants nor care on his own part. Therefore the nonsuit was properly granted. (21 *Wend.* 618. 12 *Pick.* 177. 2 *Hill*, 205.)

*By the Court*, PRATT, J. The evidence upon the trial of this cause shows quite clearly that the plaintiff was himself guilty of negligence; and had one of the men upon the stake train been injured by the collision, the evidence would be quite as strong to establish the liability of the company to him, on

account of the negligence of Coon, as it is in the present action.

It was the custom as well as the duty of the trackmen to carry lights at night upon the hand car, to enable them to perform their work faithfully, and to be seen by the trains. Had the plaintiff discharged his duty in that respect it is not probable that the accident would have occured. But as the ruling at the circuit was placed principally upon another and different ground, and as the question presented for our consideration, by the decision there, has not, to my knowledge, been expressly passed upon by the courts of this state, and is a question of very great importance, from the frequency with which accidents of that kind are liable to happen upon the numerous rail-roads of the state, it may as well be met in this case at once, and the principle settled as far as an adjudication by this court can settle it.

It has become still more important that the liability of the principal to his agents or servants, in cases of accidents under such circumstances, should be clearly ascertained and settled, since the passage of the act giving the representatives, when death ensues, the right to sustain an action for the damage.

The question involved in this case has not until recently become the subject of judicial investigation, and the decision at the circuit was influenced, at least, if not controlled, by the decisions in the late cases of *Farwell* v. *The Boston and Worcester R. R. Co.* (4 *Met.* 49,) and *Priestly* v. *Fowler*, (3 *Mees. & Wels.* 1.) The correctness of the decisions in those cases was not seriously questioned by the able counsel for the plaintiff, upon the argument of this cause. Indeed in the able opinions of Chief Justice Shaw, in the former, and of Lord Abinger in the latter case, the subject, as far as the facts of those particular cases are concerned, would seem to be exhausted. And I feel that it would be presumption in me to attempt to add any thing to the force of those decisions, by way of argument or illustration. It only becomes necessary, therefore, to examine the facts in this case, and see if they present any questions differing, essentially, in principle from those presented and passed

Coon *v.* The Utica and Syracuse R. R. Co.

upon in those cases. The doctrine established by those cases I understand to be, " that the principal is not liable to one agent or servant for the injury which he may have sustained in consequence of the misfeasance or negligence of another agent or servant of the same principal, while engaged in the same general business or employment." (*Story on Agency,* § 453, *&c. and notes. Murray* v. *South Carolina R. R.,* 1 *McMullen,* 385. *Brown* v. *Maxwell,* 6 *Hill,* 592.)

Do the facts in the present case present the same questions? and if not, do they present questions differing essentially in principle?

*First.* Assuming that the accident happened in consequence of the mismanagement of the stake train, was such mismanagement the act of an agent of the company, or of the company itself? It was strenuously insisted upon the argument that the negligence must be ascribed to the company itself. The reason assigned in support of that position was, that the stake train started from the principal depot of the company, and was in fact, or must be deemed to be, in charge of a principal agent of the company. If the negligence is to be deemed the direct act of the company, it must result from one of two positions. It must result either from the character of the agents in charge of the train and the relation which they sustained to the parties to this suit, or from the character of the train itself and the fact that it started from the principal depot. To make the company liable under the first alternative there must be some general rule adopted, by which agents of a particular grade or authority represent, as to agents of a different grade, the principal in cases of this kind; and the rule adopted in the cases above cited must be restricted to cases where the negligence was occasioned by the act of an agent of the same grade, and endowed with the same authority, with the agent or servant who received the injury. All agents and servants represent their principals, for certain purposes. The principle of *respondeat superior,* with certain restrictions and limitations, is readily conceded; but to assume that the agents in charge of the stake train, in this case, represented their principal, is assuming the very point in dispute.

In the first place there is no evidence to show that the persons in charge of the stake train at the time of the accident were agents or servants of the company, of greater or different powers or authority than the plaintiff in this suit. There was no evidence to show that he had not as great a right to command them as they had to command or control him. His business, for aught that appears, was equally necessary and important to promote the general interests of the company, as theirs.

But in the second place, if the agents were possessed of different degrees of power and authority, I can discover no principle which should make that circumstance vary the rule. There is no principle which should make the employer liable to one of his common laborers for injuries sustained in consequence of the negligence of his foreman or overseer, which should not also make him liable for the negligence of another common laborer. There cannot be any distinction of that kind. They all represent the principal, for certain purposes, and the principal is liable to a stranger for an injury received in consequence of the negligence of the former, as well as the latter. The rule itself of *respondeat superior* does not spring directly from principles of natural justice and equity, except as those principles grow out of, and are connected with, principles of expediency and public policy. The negligent act is a wrong on the part of the agent, and instead of being in accordance with the instructions of his principal, it is deemed to be directly the contrary, and the agent, in cases where the principal suffers damage by his negligence, is liable to indemnify him. The dictates of natural justice, disconnected with principles of expediency, would indicate that every individual should be responsible for his own wrong, and that no person should be punished for the wrong of another. But when the rule is examined in the light of expediency, in connection with the business interests of the community, its necessity and wisdom, as applied to strangers, are manifest as one of the most salutary rules known to the law. Therefore when it is insisted that the rule shall be extended and applied to the case of one servant or agent suffering from the negligence of his fellow agent or servant, before sanctioning such applica-

tion by judicial decision, we should examine carefully the difficulties which may arise, and the effect which may result from such application, to the community at large.

Some of the consequences which would result from the extension of the rule to cases of this kind, will be found in the opinion of Lord Abinger in *Priestly* v. *Fowler.* " If the master be liable to the servant in this action, the principle of that liability will be found to carry us to an alarming extent. He who is responsible, by his general duty or by the terms of his contract, for all the consequences of negligence in a matter in which he is principal, is responsible for the negligence of all his inferior agents. If the owner of a carriage is therefore responsible for the sufficiency of his carriage, to his servants, he is responsible for his coach-maker, or his harness-maker, or his coachman. The footman, therefore, who rides behind the carriage, may have an action against his master for a defect in the carriage, owing to the negligence of the coach-maker, or a defect in the harness, owing to the negligence of the harness-maker, or for the drunkenness, neglect, or want of skill in the coachman ; nor is there any reason why the principle should not be extended, if applicable in this class of cases, to many others.

The master would be liable to his servant for the negligence of the chambermaid for putting him into a damp bed ; for that of the upholsterer in sending in a crazy bedstead, whereby he was made to fall down while asleep and injure himself ; for the negligence of the cook in not properly cleaning the copper vessels used in the kitchen ; of the butcher in supplying the family with meat injurious to health ; of the builder for a defect in the foundation of the house whereby it fell and injured both the master and the servant by the ruins. The inconvenience, not to say absurdity, of these consequences, afford a sufficient argument against the application of the principle." And again— " In most cases in which danger may be incurred, if not in all, the servant is just as likely to be acquainted with the probability and extent of it, as his master. In fact, to allow this sort of action to prevail, would be an encouragement to the servant to omit that diligence and caution which he is in duty bound to

exercise on the behalf of his master to protect him against the misconduct and negligence of others who serve him, and which diligence and caution, while they protect the master, are a much better security against any injury the servant may sustain by the negligence of others engaged under the same master, than any recourse against his master for damages could possibly afford."

The reasoning of Chief Justice Shaw, in *Farwell* v. *Boston and Worcester Rail-Road Company*, is equally clear and conclusive, and applies as well to injuries sustained by an agent in consequence of the negligence of another agent endowed with greater or less authority by the principal, or of one of the same authority. There can not therefore, I think, be any reason for a distinction.

But as to the second alternative, it was claimed upon the argument that the stake train must be deemed to be under the immediate management of the company, because it was a train with an engine attached to it, and because it started from the principal depot of the company. Its having an engine attached to it can not vary the liability of the owners, nor change the character of those having it in charge. They are still the agents of the company, and although, for aught we know, they may be higher in authority, or engaged in a more important or dignified calling, yet, as we have attempted to show, the liability of the principal, for their acts, is not for that reason changed.

As to the *assumption* that the train started from the principal depot of the defendants, and must therefore be deemed to have started under the supervision of the defendants, there are various answers to this position. 1st. It was not proved that Utica was the principal depot of the company. 2d. If it were so, there is nothing to show that the trains started under the direction of the company. The company, being a corporation, must necessarily do its business through the medium of agents. It has no corporeal or physical existence, and can not therefore superintend the road, or run the trains, in person. The directors, as a board, can prescribe rules and regulations for the management of the road and as a guide to their agents. The adop-

Coon *v.* The Utica and Syracuse R. R. Co.

tion and publication of these rules must undoubtedly be deemed, so far as they do not come in conflict with the provisions of their charter, the act of the company itself; and so long as their agents act in accordance with these rules their acts must be deemed the acts of the company. Indeed the same rules should be applied to a corporation as should be applied to an individual who carries on a business solely through the medium of agents and servants. But there was no evidence to show that this train was started on this occasion and run in obedience to the rules and regulations of the company. On the contrary the whole struggle at the trial, on the part of the plaintiff, was to establish the fact that the train was running in an unusual time and in an unusual manner. If that were so, I am unable to discover the evidence that the company authorized it. But assuming that the train was run in strict accordance with the regular rules and regulations of the company, (for it will not be contended that there was any meeting of the board in relation to this particular train, for this particular occasion,) it will be equally fatal to the plaintiff's right to recover. The plaintiff will be deemed to have contracted for his services with a full knowledge of the regular rules and business of the company, and to have taken upon himself the risks necessarily growing out of such business. Indeed it would be impossible to predicate negligence of what was done in the regular course of the ordinary business of the company. They have a right to make any regulation which they may deem proper, to promote their own interests; and their servants, if they do not wish to run the risk, must leave their employment. I see no reason why they may not, as far as their own servants are concerned, run their cars without lights, and at any hour they please, provided their rules in that respect are known to those who enter their employment. If, on the other hand, the train was running out of time and without lights, when it was their duty to carry them; in other words if there was negligence in the management of the train, it should, in the absence of proof to the contrary, be deemed the act of those having it in charge. They would be liable to the company for the damage which the train

might sustain; and if a recovery should be had against the company, the conductor, or those in charge of the train, would be liable to indemnify the company. There is also another answer to this suggestion in relation to the liability of the company on account of the train having started from the principal depot. It does not appear that the time of starting from Utica was necessarily connected with the accident, or that there was any difficulty in running the train over the track to the place of destination without injuring the workmen on the road. On the contrary it was strenuously insisted, on the trial, that the conductor of the stake train was guilty of negligence in starting from Green's corners so soon after the passenger train had passed, and in not having his lamps burning. If there was any negligence in any part of the conduct of the train, it was in thus starting without a light. It can scarcely be pretended that the company authorized him to start at such a time and in such a condition as to endanger the lives of other workmen upon the road. It is therefore simply a case of one servant being injured through the negligence of another servant or agent of the same principal, and comes, as far as that part of the case is concerned, directly within the principle decided in the cases first above cited.

*Secondly.* Were the plaintiff and the conductors of the stake train employed in the same general business? The business of the plaintiff was to examine certain portions of the road after the passing of each train, to see if the rails were in their proper positions, and the road in order. The stake train was used for conveying materials to repair the road. The great object and business of the company are to transport passengers and freight between the cities of Utica and Syracuse. To facilitate this business, and to render the road capable of performing the business required of it by the public as well as by the interests of the stockholders, a great many different agents and workmen are necessarily employed. To these are assigned various duties; to some are assigned the duty of examining the track of the road; to others the keeping the road in repair; some are engineers and some brake-men; some are conductors and some

switch-men; but they are all necessary and indispensable for carrying out the primary object, to wit, the safe and speedy transportation of passengers and freight over the road. They are all engaged in one general business and common enterprise. Just as clearly so as in the case of *Farwell* v. *The Boston and Worcester R. R. Co.* Some kinds of business, from the nature of such business, necessarily require a great variety of agents and workmen; and the hazard of the business, we may well conceive, may be materially enhanced from the great number of servants it may become necessary to employ in carrying it on. The person, therefore, who contracts to enter into the service of a man or company engaged in a business of that character must, when he contracts, regulate his compensation so as to meet the increased risk, or provide in the contract for indemnity against injury in consequence of the negligence of his fellow servants. He then has an opportunity to examine into the nature of the business, the number and character of the persons employed, the duties assigned to each, and every thing bearing upon the dangers incident thereto; and must provide for the same in his contract. It is obviously the duty of the employer to do nothing which would unnecessarily endanger the safety of those in his employ. He should not knowingly employ unskillful or negligent servants, or knowingly do any act by which the dangers ordinarily connected with the particular business should be increased, without at least giving notice to those who may be affected by it. There is nothing in the case showing any want of diligence on the part of the defendants, in that respect.

For any thing that appears, those in charge of the stake train were possessed of the requisite skill, and were ordinarily careful and prudent men. That is all that could be required of the defendants in that respect.

The plaintiff has been, it appears by the evidence, very seriously injured. If the company, out of their abundance, have not acted generously with him, we regret it; but with the subject judicially we have nothing to do. It is our duty to ex-

pound the law as we find it, and leave the parties to exercise that degree of generosity to each other which their own consciences may dictate.

New trial denied.

SAME TERM.  *Before the same Justices.*