Spalding, J.,
dissenting: In this case I find myself unable to *373 concur in the opinion which has been expressed by my learned associate, and which has been concurred in by a majority of this court. The facts, in brief, are these: The defendant in error was in the employ of the Little Miami Railroad Company, prior to and on August 13, 1846, in the capacity of engineer on a train of cars. On that day, in going from Cincinnati to Springfield, a short distance above Columbia, the ascending train, on which he was conductor, came in collision with the descending train, which re-suited in serious injury to the person of Stevens, and for this injury ho sued the railroad company to recover damages.
This collision took place on the day after the completion of the Little Miami Railroad to Springfield.
^Previous to that day a change of place for passing the cars (that is, the up and down trains) had been agreed upon. They had been in the habit of passing each other at a place called Plainville, some three miles above Columbia. On that day the cars were to pass at Columbia. Cards had been delivered to all the engineers and conductors to that effect, except Stevens.
The testimony shows that Smith, the conductor on this train,, was furnished with a card by tho company in due season, fixing the time of passing different towns, as then recently changed by tho company; that Clement, tho superintendent of the company, in due time placed the new cards in the hands of a suitable agent of the company, to be delivered to all the conductors and engineers, including Stevens; but by inattention, mistake, or perhaps negligence of the agent, a card was not delivered to Stevens. At least tho testimony tended to prove this. Morrell, a witness, states that Cole, an agent of tho company, delivered a new card to Smith, conductor on Stevens’ train. Huoston states that A. H. Lewis, agent of the company, went from Springfield on the descending train on the day of tho collision, and after tho accident gave him (Hueston) new cards to deliver to Smith and Stevens. jffazen states that Lewis went up to Springfield the day before the collision.
Upon these facts a jury might well inquire, if in law it was material whether Cole and Lewis were not directed to deliver the new cards, and whether that was not the mission of Lewis to Springfield on the day previous to the change. Clement, in his affidavit, which was jiroper on motion for a new trial, states that he directed Lewis to deliver a new card to Stevens.
*374 Now, if it was the duty of Smith, the conductor, to notify Stevens of the change, if the conductor is the commanding officer, or if Cole or Lewis had been directed to furnish Stevens with a new card, in either event, the second charge asked to be given to the jury by defendant below was very material in this case.
Upon these facts the plaintiff below recovered judgment, *and the question now presented is, was he entitled to recover? Did the court below rule correctly?
In the view I have taken of this case, I think the judgment-ought not to be sustained, and I have arrived at this conclusion mainly from the following consideratio'ns:
1. It is not warranted by any English or American decisions, but is in direct opposition to the well-settled law of both countries.
2. The law thus settled is founded in wisdom, and on principles of public policy, adapted to our condition, and should not, therefore, be changed. (1)
3. Upon the facts in this case, other than those already ad ver tedio, the plaintiff below was not entitled to recover under the law as it exists, applicable to those facts.
If I am correct in these positions, then it would seem that the principles announced in the opinion of the court are in conflict with recognized authority, in violation of public policy, and liable to produce “alarming consequences,” when carried into the practical details of business.
What, then, is the question of law presented in this case? It is this: As between principal and agent, is the principal liable for an injury which one agent receives through the negligence or carelessness of another, without the fault, assent, or direction of ; the principal ?
The evidence shows that the railroad company used all the care and diligence which prudence required, to furnish Stevens with notice of the change in the time and place the trains were to pass. Smith, the conductor on the train, was furnished with a card. A suitable agent of the company was directed to furnish Stevens, as well as all the engineers and conductors, with cards, and all were furnished except Stevens. The result was, as claimed by Stevens, that he came in collision with the descending train, and sustained personal injury.
If this be true, why shall the company be hold responsible? *Not for any act or neglect on their part, for all was done *375 that the most prudent and cautious could do. If the company are liable, then, it is because the principal is responsible to one agent for'the negligence of another, in a case where the principal has been guilty of no laches.
I. Such is not the law. It is now well settled that the employer is responsible to strangers for all injuries produced .by the negligence or carelessness of the servant, while the latter is doing the employer’s business, but the rule has not been extended further. 2 Kent’s Com. 259; 4 Met. 49.
But even this proposition was reluctantly assented to in 6 Term, 659, on the authority of Tuberville and Stamp. Ld. Raym. 264.
It is said in some of the books (1 East, 106), the master is liable because he employs an unskillful or negligent servant.
Again, it is well settled, that if a servant willfully runs his master’s carriage against another’s carriage, and does an injury, the master is not liable for the injury thus occasioned. McManus v. Critchett, 1 East, 106; Story on Agency, sec. 556.
No master is chargeable with the acts of his servant, but when he acts in execution of the authority given him. Salk. 282; 1 East, 106.
Such is the law as between the principal and strangers who may be injured by the nonfeasance or misfeasance of his agent. But these rules have never before been applied as between the principal and an agent who may have been injured by the negligence of another agent. Thus it is laid down in Story on Agency, in broad terms, “that the principal is not liable for any injury done to one agent by another, while engaged in the same business or employment. That the relation of master and servant, or principal and agent, creates no contract, and therefore no duty on the part of the principal; that the servant or agent shall suffer no injury from the negligence of others employed by him in the same business or service; and that, in such cases, the servant or agent takes upon himself the hazard of any such injury which may arise in the ^course of such business or employment; and his remedy for any such injury, by the misconduct or negligence of a fellow servant or agent, lies solely against the wrong-doer himself.” Story on Agency, sec. 453.
In Priestly v. Fowler, (1) 3 Mees. & Welsb. 1, the facts ware these : Two servants were employed in conveying goods for their *376 employer, and, by the negligent overloading of the van by one servant, it broke down upon the road, and thereby the other servant, in his proper place, received an injury, and brought his suit against his employer, to recover damages for the injury. Held, that the action could not bo sustained.
Lord Abinger, C. B., in pronouncing the opinion of the court, said : “It is admitted that there is no precedent for the present action, by a servant against his master. . . If the master be liable to the servant in this action, the principle of that liability will be found to carry us to an alarming extent. The master would be liable to the servant for the negligence of the chambermaid, for putting him in a damp bed; for that of the upholsterer, for sending in a crazy bedstead, whereby he was made to fall down while asleep, and injuro himself,” etc. “But in truth, the mere relation of the master and the servant never can imply an obligation on the part of the master to take more care of the servant, than ho may reasonably bo expected to do of himself.”
As between the principal and strangers who were affected by the acts of his agent, in the cases whore the principal is liable, there is an implied obligation or contract on the part of the principal, to procure trustworthy agents, and this is the foundation of the liability of the principal. Story on Agency sec. 52.
Now, as between the principal and his agent, in the management of' business requiring more than one agent, the agents all assume the duties of their positions, knowing that the business is to be managed by various agents, and there is no ^implied obligation or contract by which the principal guaranties the absolute and perfect fulfillment, in every particular, of every duty to be discharged by each agent.
In Farnell v. Boston and Worcester Railroad Company, 4 Met. 49, Farnell, as engineer on a train of cars owned by the railroad company, sued the company for personal injury received by him, in consequence of other trustworthy agents of the company having negligently left a switch in an improper position, by reason of which the locomotive was thrown off the track, and the plaintiff injured. In this case it was held, that, “where a master uses due diligence in the selection of competent and trustworthy servants, he is not answerable to one of them, for an injury received by him in consequence of the carelessness of another, while both are en *377 gaged in the same service;” and, upon the facts, the plaintiff, it was held, had no right to recover.
The chief justice, in delivering his opinion, says: “It is laid down by Blackstone, that if a servant, by negligence, does any damage to a stranger, the master shall be answerable for his neglect. But this presupposes that the parties stand to each other in the relation of strangers, between whom there is no privity, and the action in such case is an action sounding in tort. The maxim, respondeat superior, is adopted in that case from general considerations of policy and security. But this does not apply to the case of a servant bringing his action against his own employer, to recover damages for an injury arising in the course of that employment, where all such risks and perils as the employer and the servant respectively intend to assume and bear, may bo regulated by the express or implied contract between them, and which, in contemplation of law, must bo presumed to be thus regulated.”
The court also held tho action could not be sustained on the ground of any implied contract; for the law does not imply any such contract from the relation of master and servant. The person employed takes upon himself the natural and ordinary risks and perils incident to the performance of such services, *and on legal presumption,-the compensation is adjusted accordingly.
,Tn Brown v. Maxwell, 6 Hill, 592, it appeared that Brown carried on the business of stone-cutting, and Maxwell and others were in his employ. Scott was Brown’s foreman, and had charge of the work. In Brown’s absence, Scott directed a stone to be taken from a pile, which was so carelessly removed that another stone fell on Maxwell, engaged in his proper place, and broke his leg. The injury resulted from the negligence of the foreman and other agents. It was held that, on the facts, Brown was not liable.
In Murray v. S. C. Railroad Company, 1 McMullen, 385, the syllabus is:
“ The railroad company are not liable to one of their agents for an injury arising from the negligence of another agent.”
Murray, a fireman, had his leg crushed in consequence of an engineer on his train negligently running over a horse.
In Hayes v. The Western Railroad Co., 3 Cush. 270, the same principle is laid down and fully sustained. The syllabus, in part is:
*378 “ The proprietors of a railroad are not responsible to a brakeman in their employment for an injury sustained by him in consequence of the neglect or fault of another brakeman, engaged in the same service, even though the latter be at the same time conductor of a train of freight cars.”
In Coon v. Syracuse and Utica Railroad Co., 6 Barb. 231, the same doctrine is maintained.
If these authorities, in both England and the states of this Union, do not establish and settle this question, then I think it can not be settled by authority; especially when there is no well-adjudicated case to the contrary. But it is attempted to distinguish the case at bar from the authorities cited, in the following particular's:
First. That in some of the cases cited it was in proof *that the defendant used reasonable prudence in procuring trustworthy and proper agents.
Second. That the engineer, in this case, was a subordinate officer, acting under the direction of the conductor, and was not an agent of the same class; or, in other words, that the engineer acted under the direction of the conductor, and the act or negligence of the conductor was the act of the principal, and hence the railroad company is liuble for an act of their own negligence.
It seems to me that this attempt to distinguish, only cx’eates a distinction without a difference, and simply distinguishes this case from those cited, as being in conflict with them. But I will considci‘ these propositions in their order :
In 1 McMullen, 385, the engineer, by whose negligence the injury occurred to another agent of the same principal, was proved “ to be a skillful px'ofessional engineer',”
In 4 Metcalf, 49, the agreed statement of facts admitted that the agent whose negligence caused injury to a fellow-agent, “ was a carefxxl and trustworthy servant.” In all the other cases there was no proof upon the subject. The case in 1 McMullen is decided independently of the fact so proved, and in 4 Metcalf it was unnecessary to go further than to decide upon the state of facts before the court.
In the case at bar there was no proof on the subject, nor was any attempt made on the part of the plaintiff below to prove that the conductor and other agents of the company were not trustworthy, and such as a prudent company would select.
*379 The claim of the plaintiff below imputed nonfeasance to the railroad company, by means of negligence in their agents, resulting in the injury for which the suit was brought. That was a subject of averment in the declaration, material to the plaintiff’s claim, and like all other material facts, must be proved. Gould on Pl., chap. 4, sec. 7; 1 Greenl. Ev., sec. 74. And this is the rule both of the civil and the common law. Negligence is not presumed, but the contrary ; and if the plaintiff would seek to recover by reason of it, the onus probandi *is on him, or rather, it will not be presumed that agents selected by the company were not trustworthy, so as to impute negligence to the company. Wright Sup. C. 202; 1 Greenl. Ev., sec. 80 ; 17 Johns. 92; Lane v. Crombie, 12 Pick. 177; 6 Johns. 90.
The authorities also show that unless it is proved that agents •are not trustworthy, it will not bo presumed. So far, then, as the employment of trustworthy servants is concerned, there is no proof or legal presumption that such were not employed by the company. Upon this point the law and evidence is with the defendant below. The utmost that has ever before been claimed, is, that the principal “ is bound to provide for the safety of his servant, in the course of his employment, to the best of his judgment, information, and belief” (1 Mees. & Welsb. 5), which, upon the law and facts, the company fully did. The action in the case at bar, however, is not for employing agents not trustworthy, but for changing the place of passing for the cars, “ without giving the plaintiff (below) due and timely notice thereof..”
The declaration proceeds upon the ground that the company were not only “bound to provide for the safety of their servants to the best of their judgment, information, and belief,” as by directing trustworthy agents to give Stevens “ a new time-card,” but that the company were bound to furnish the card absolutely by their agents (and corporations can only act through agents), and that they are responsible for the failure of the agents to furnish such card, when the failure was without the fault of the company. If this is so, then the company impliedly guaranties to each one of their agents the perfect performance of .every duty of every other agent. There is in reason and law no such implied contract. This is carrying the liability of the principal to an extent which will render the employment of agents impracticable, and impose *380 on the principal a duty unheard of in the judicial history of the common law.
II. It is claimed that the engineer was a subordinate office!’, ^acting under the direction of the conductor ; and that the conductor being the superior officer, acting for the company, his negligonce was that of the company.
The question decided in the cases cited, is, that a principal is not liable for an injury to one servant resulting from the negligonce of another. It is a broad, comprehensive doctrine, and applies to all agents engaged in the business of the principal. It is not limited to superior or inferior agents.
In the case of 6 Barbour, 240, Pratt, J., says: “ The reasoning of Chief-Justice Shaw, in Farwell v. B. & W. Railroad Company, is equally clear and conclusive, and applies as well to injuries sustained by an agent in consequence of the negligence of another agent, endowed with greater'or less authority by the principal, or of one of the same authority. There can not, therefore, I think, be any reason for a distinction.”
In that case, a conductor run a train over a trackman, and this act was as much the act of the company as was that of Smith, the conductor, in the case at bar, in not disclosing the proper time of passing to the engineer, or of the other agents of the company, in neglecting to furnish Stevens with a new card. The same opinion seems to have been entertained in the case referred to in 3 Cushing.
In Brown v. Maxwell, 6 Hill, 592, the injury to an agent occurred by the negligence of the foreman and other agents. The foreman is in law the principal, and yet, as to a subordinate agent, his negligonce was not hold to be the negligence of the principal.
It is immaterial that the negligence of subordinate agents contributed to the injury. If the negligence of a foreman was the negligence of the principal as to a subordinate agent (which it is not), and such negligence contributed to the injury, the principal would bo responsible. Brand v. Troy and Schenectady Railroad Co., 8 Barb. 369; 6 Barb. 235; 6 Hill, 592. This is a rule applicable to collisions generally.
There is, then, upon principle and authority, no such distinction as claimed by the defendant in error.
*But, admitting the claim of plaintiff below, that the engineer is an officer subordinate to the conductor, and receiving the commands of the company through him, yet he (the engineer), *381 knowing this, does, by his contract to serve in that capacity, impliedly agree to hazard all the risks of the situation—among which are included the casual negligence of the conductor, not arising from the fault or nonfeasance of the company. So that, in any view of the case, it rests upon the plaintiff to show positive nonfeasance, or default, on the part of the company, in not procuring trustworthy conductors; and if he can not show this, he can not hold the company responsible for injuries arising from the neglect of such conductor.
But if there were, the proof in this ease does not establish, to my mind, that the engineer was subordinate to the conductor. The “time-cards ” furnished to both were printed cards, directed to the conductor and engineer, as “Instructions to Conductors and Engineers for Running Trains;” and whatever the facts may be, there is no proof to warrant the assumption that one was a subordinate officer. Besides, the negligence of the conductor, who-was furnished with one of the new time-cards, could not have been evidence of negligence on the part of the company, as the object in furnishing him with the card was to give the train of cars he conducted the benefit of it.
Another agent distributed, or was directed to distribute, the-new time-cards. In this respect the company used all the diligence which prudence required ; and especially should this view be taken on a motion for a new trial, with the evidence before the court.
The opinion pronounced by a majority of this court proceeds solely upon the ground that the negligence was that of Smith, the conductor, in not notifying Stevens of the change. He was on the train, engaged with Stevens in running it.
The learned chief judge, in his opinion, proceeds upon the ground that the negligence was not that of the conductor, but that of the superintendent—of a person not engaged in running the train. I think the court below, on a motion for a new *trial, could not properly take this view, with the affidavit of the superintendent on file, showing that he directed an agent ¡0 deliver the new cards, besides the other evidence upon that subject. In either event, whether the negligence was that of the conductor or of another agent of the company directed to deliver the new cards, in the view I have taken, the court below should have given to the jury the second charge, as requested.
*382 II. The solemn adjudications of courts of recognized authority should be followed, unless not applicable to our condition. There is nothing to distinguish this state from others, as to the liability of the principal to the agent. The province of the court is defined by the maxim, jus dicere et non jus dare, and it is an ancient and true maxim, that “omnis innovatis plus novitate perturbat, quarn utilitate prodest.” It has been declared that even when the reason of a rule can not well be discerned, “ the wisdom of the rule has in the end appeared, from the inconveniences that have followed the innovation.”
I would not, therefore, overturn the solemn decisions of courts of high authority, except for the most weighty reasons to warrant such a course. The authorities cited, as I conceive, are founded in wisdom and policy.
In Priestly v. Fowler, 3 Mees. & Welsb. 7, the court say : “ To allow such an action to prevail, would be an encouragement to the servant to omit that diligence and caution which he is in duty bound to exercise in behalf of his employer, to protect him against the misconduct or nogligence of others who serve hiin, and which diligence and caution, while they protect the master, are a much better security against an injury the servant may sustain by the negligence of others engaged under the 'master, than any recourse against his master for damages could possibly afford him.’ ”
At the present term of this court, we have decided that, as a matter of public policy, the owner of a trunk delivered to a common carrier, and by him lost, may prove its contents, and their value.
The agents of railroad companies are intrusted with *the care of the lives and property of individuals. Any principle which may encourage negligence endangering these, is fatal to all the groat interests of society, and subversive of its order and well-being. These companies can only be managed by a variety of agents, and if we are to teach each agent, that for the negligence of the othei'S, resulting in injury to himself, he can grasp the treasures of the company, and procure a competency for life, he ceases his vigilance over those with whom he co-operates—a bribe is held out to him to incur personal risks, which he may have facilities to render partially harmless to him, but which may carry destruction to a hundred homes, and make widows and orphans throughout the land, by a reckless waste of human life. “ Salus populi suprema lex.”
*383 Let the agents understand that each shall be liable to the other, for negligence resulting in personal injury, and remove the bribe to incur personal hazards, and a motive is constantly operating to protect the lives and property of those intrusted to their care. This is one of the reasons for the rule in 4 Metcalf, 49. The court say, “ Where several persons are employed in the conduct of one common enterprise, and the safety of each depends much on the care and skill with which each other shall perform his appropriate duty, each is an observer of the conduct of others—can give notice of any misconduct, incapacity, or neglect of duty.”
The rule, as recognized by the court, will result in great practical inconvenience and wrong. If I employ two cooks, and use all the care in their selection that prudence requires, no matter how well they may know each other, while I have no personal means of knowing either, except by prudent inquiry, I am responsible to one of them, if she is scalded by the negligence of anothor. I conceive that such is not the implied contract arising out of those relations. And this consequence will extend to every case where the relation of principal and agent exists.
III. Aside from all these considerations, the judgment below ought not to be sustained. It is a well-settled principle iu *case of collision or injury, that a party who is himself in default, (1) and thereby causes or contributes to the injury, can not recover. 8 Barb. 369; 6 Barb. 235; 6 Hill, 592; 21 Wend. 188, 615; 19 Wend. 399. The evidence satisfies me, that Stevens, although not furnished with a “new time-card,” so as thereby to know the place and time of passing the descending train, yet was otherwise put upon inquiry; did know, or had reason to know of the change, and did not use that caution to avoid the collision, which prudence and the rules of the railroad company required.
The evidence shows that on the day of the collision Stevens stopped the train at Columbia, the new passing place, and asked the conductor if the change was not to take place there on that day; that Stevens stopped because he believed so, but when the conductor told him they did not change there on that day, he went on as though in doubt and uncertainty.
*384 It was claimed by the company that by printed rules, which were in evidence, directed to conductors and engineers, it was the duty of the engineer in cases of doubt to stop his speed.
By rule 10 it is declared that “in cases of uncertainty as to the occupation of the track, a man must bo sent ahead or back, and kept at least one hundred yards distant until the danger is over.”
By rule 16: “ Care at all times is earnestly enjoined. Always take the safe side in• cases of doubt.”
It was proven by West, a witness of plaintiff below, who was an engineer, that he thought when they left Columbia there was something wrong, and he wont back. He noticed they blew the whistle a great deal; that it was a crooked place in the road; that no man was started ahead of the train *in this dangerous place. Witness knew there was something wrong from their checking up, etc.
Stevens himself told the witness Hazen, a few days after the collision, in answer to inquiries, “that he had been blowing his whistle on all the curves after leaving Columbia, because ho was expecting the train.”
Stevens undoubtedly knew, or had reason to believe, that the change was to take place, yet he did not send a man ahead, and the result was that a collision took place on a curve, which might have been avoided if he had used proper precautions, such as the rules of the company required.
The defendant below requested the court to charge, “ that if the jury believe Stevens was in doubt and uncertainty as to whether the trains ought to pass at Columbia, instead of Plainville ; and if he expected to meet the down train between Columbia and Plainville, it was his duty to run slow; and if it was prudent, and according to the usages of engineers, and required by the printed rules of the company, in cases of doubt and uncertainty, to send a man ahead of the train and keep him from one hundred to one hundred and fifty yards ahead of the engine, until the bends and curves in that place had been passed, and all apprehension of danger was over; and the plaintiff neglected to send a man ahead, as required by prudence and the printed rules, and such neglect contributed to bring on the collision and produce the injury, the plaintiff was not entitled to a verdict.”
*385 This charge was refused, and in this I think the court erred, as well as in the refusal to give the second charge asked for.
In any view which can be taken of this case, it is clear to my mind, that the plaintiff below was not entitled to recover, and, upon the evidence before the court, that a new trial should havo been granted.

 1 Ohio, 245; 6 Ohio, 447.

 Hutchison v. York, etc., Railroad Co. West. Law Journal, 563.

 Volenti non fit injuria. (Wing Max. 482.) It is a general rule of the English law, that no one can maintain an action for a wrong where he has consented or contributed to the act which occasions his loss. Broom’s Legal Maxims, 128, and authorities there cited.