## WALLACE v. JOHN A. CASEY CO.

(Supreme Court, Appellate Division, Second Department. April 23, 1909.)

1. MASTER AND SERVANT (§ 332*)—INJURIES TO THIRD PERSON—ACTION FOR INJURING CHILD—INSTRUCTIONS.

In an action for negligence of defendant's employé in dropping or throwing from the window of the loft of a shed a barrel which fell against a child standing in the street, defendant's superintendent testified that the men were allowed to give barrels to poor people, and the court charged, at plaintiff's request, that "the admission of the superintendent that the workmen were allowed to throw barrels out to persons calling for them is an admission of defendant." *Held* reversible error, because the superintendent did not make it.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 332.*]

2. EVIDENCE (§ 243*)—ADMISSIONS—MANNER OF MAKING.

If the superintendent did make such admission, it was not defendant's.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 908–915; Dec. Dig. § 243.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. NEGLIGENCE (§ 96*)—ALLOWING CHILD TO WANDER UNATTENDED IN STREET.
    It is negligent for a mother to allow a child to wander unattended in the street six blocks from home.
    [Ed. Note.—For other cases, see Negligence, Cent. Dig. § 159; Dec. Dig. § 96.*]

4. NEGLIGENCE (§ 35*)—INJURY TO CHILD—PASSER-BY IN STREET.
    Where a three year old child follows an older child to a place where the latter is sent for wood, and while waiting there for the errand to be done is injured by a barrel given to his companion, thrown from a window into the street, he cannot be considered merely a passer-by in the street.
    [Ed. Note.—For other cases, see Negligence, Dec. Dig. § 35.*]

5. NEGLIGENCE (§ 96*)—IMPUTED NEGLIGENCE—PARENT TO CHILD.
    The negligence of a mother in leaving a three year old child unattended in the street, where he is injured by negligently getting in the way of a barrel thrown from a window, is imputable to the child.
    [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 151–156; Dec. Dig. § 96.*]

6. NEGLIGENCE (§ 95*)—IMPUTED NEGLIGENCE—OLDER BOY TO YOUNGER IN HIS CUSTODY.
    The negligence of a boy 12 years of age contributing to the injury of a three year old boy in his custody is imputable to the child.
    [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 157–161; Dec. Dig. § 95.*]

7. NEGLIGENCE (§ 3*)—PERFORMANCE OF GRATUITOUS SERVICE.
    One undertaking gratuitously to discharge a duty is accountable for the manner of its discharge, though the fact that the service is gratuitous may be considered on the question of the degree of care required.
    [Ed. Note.—For other cases, see Negligence, Dec. Dig. § 3.*]

8. PRINCIPAL AND AGENT (§ 92*)—LIABILITY FOR DEBTS IMPLIEDLY AUTHORIZED.
    The maxim, "Qui facit per alium, facit per se," applies only to an act in fact, and not impliedly, authorized.
    [Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 92.*]

9. PRINCIPAL AND AGENT (§ 131*)—RULE RESPONDEAT SUPERIOR—APPLICATION.
    The rule respondeat superior is applied to acts done without authority, and even in disobedience of positive orders.
    [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 458; Dec. Dig. § 131.*]

10. MASTER AND SERVANT (§ 302*)—ACTS OF SERVANTS—ESTOPPEL TO DENY AUTHORITY THEREFOR.
    A master is not permitted to deny that an act of his servant was done by his order, if done within the course of the employment in furtherance of the master's business.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1217–1221; Dec. Dig. § 302.*]

11. MASTER AND SERVANT (§ 306*)—INJURIES TO THIRD PERSONS—LIABILITY FOR ACTS OF SERVANT.
    For the acts of the servant, within the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance thereof, and the master's interest, the master will be responsible, whether the act be done negligently, wantonly, or even willfully.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1230–1232; Dec. Dig. § 306.*]

12. MASTER AND SERVANT (§ 302*)—INJURIES TO THIRD PERSONS—LIABILITY FOR ACTS OF SERVANT.
    In case of alleged willful or reckless acts, the test of the master's liability is whether the act was done within the general scope of the employment or with a view to the furtherance of the master's business, or wheth-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

er the servant did it to effect some other purpose without having the master's interest or service in mind.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1217–1221; Dec. Dig. § 302.*]

13. MASTER AND SERVANT (§ 304*)—INJURIES TO THIRD PERSONS—LIABILITY FOR SERVANT'S ACTS.

Though an employé authorized in the course of his employment to give away wood may be regarded as acting within the course of his employment in the furtherance of his master's business and to serve his purposes, the rule respondeat superior does not extend to his negligence in so doing, resulting in injury to one identified with a recipient of the master's charity, who in such case must be held to have assumed the risk of the servant's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1226–1228; Dec. Dig. § 304.*]

Appeal from Trial Term.

Action by Joseph Wallace, an infant, by John J. Wallace, his guardian ad litem, against the John A. Casey Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Appeal by the defendant from a judgment, entered on the verdict of a jury, and from an order denying a motion for a new trial. The action is for negligence. It appeared that the plaintiff accompanied his uncle, a lad 12 years of age, who was sent by the plaintiff's mother from their home to the defendant's factory, a distance of 6 blocks, for firewood; that the uncle gave the defendant's employé, Murtha, a nickel to get a barrel for him from the loft of a shed abutting upon the street, and that Murtha threw or dropped from the window of the loft an empty barrel, which fell against the plaintiff, then but 3 years of age, inflicting a serious injury. The uncle testified that he did not know that the plaintiff had followed him or was present until the accident happened. The plaintiff's mother was not called as a witness, and he offered no evidence to show what care was exercised by her as his custodian, or how he came to be allowed to accompany or follow his uncle. It appeared that it was customary for the poor people in the neighborhood of the defendant's factory to gather firewood, empty rosin barrels, from the factory yard; and that sometimes the workmen helped them to get barrels from the loft of the shed. There was nothing to show that the defendant adopted that method to get rid of the barrels; the evidence indicates that they were of value; the workmen were forbidden to take pay for them; the money paid appears to have been given the servant for his own; and the case went to the jury on the theory that, so far as the defendant was concerned, the act was purely charitable. The defendant's evidence tended to show that the accident did not happen on its premises, or that, if it did, it was during the noon hour, and that Murtha was induced by the payment of five cents to return to the loft, after he had quit work, and to throw out the barrel. The court submitted three questions to the jury, viz.: (1) Did the accident happen as claimed by the plaintiff? (2) Was Murtha's act in throwing out the barrel done within the line of his employment and the scope of his authority? (3) Did the mother's negligence in allowing him to go unattended contribute to the accident? In respect to the latter proposition, the court charged the jury that the mother was negligent, but that such negligence would not defeat a recovery in case the accident would have happened just the same had the plaintiff been attended by a suitable person. A motion to dismiss was made at the close of the evidence on the grounds, inter alia, that Murtha's act was not done in the line or scope of his duty, and that it was negligent in law for the plaintiff to be where he was, unattended. At the close of the charge, the plaintiff's counsel requested the charge that "the admission of the superintendent that the workmen were allowed to throw barrels out to persons calling for them is an admis-

sion of the defendant," to which the court replied, "He in that respect stood for the defendant. I charge that." The superintendent had made no such admission.

Argued before WOODWARD, JENKS, GAYNOR, RICH, and MILLER, JJ.

John C. McGuire (E. J. Connolly, on the brief), for appellant.

William W. Wingate (Andrew F. Van Thun, Jr., on the brief), for respondent.

MILLER, J. The exception to the charge that the admission of the superintendent was an admission of the defendant presents reversible error, because, first, the superintendent had not made it, and, second, if he had, it was not the admission of the defendant—a proposition which I need not discuss. The error was harmful. The superintendent had testified that the men were allowed to give away the barrels to poor people, a very different thing from being allowed to throw them out of the window into the street. Upon the most favorable view of this case to the plaintiff, it was a question of fact whether Murtha's wrong was committed in the course of his employment as such. The jury must have understood from the charge, excepted to, that he was in fact authorized by the master to do the negligent thing complained of.

But we should not send this case back for a new trial without deciding the main question presented by the record before us, lest a wrong inference be drawn. The point is raised, but none too plainly, by the motion to dismiss. In the absence of explanation, it would seem plain, as the court charged the jury, that the mother was negligent in allowing a three year old child to wander unattended six blocks from home; but the court submitted the case to the jury on the theory, not excepted to, that the plaintiff was a passer-by in the street, and that, as he would not have been chargeable with negligence if he had been an adult, the mother's negligence was not to be imputed to him. But he was not merely a passer-by in the street; he was, in fact, at the place of the accident because of the errand of the older lad, and was waiting for that errand to be done. Had he arrived at years of discretion, he would have known that Murtha was about to drop the barrel from the window, and would have been negligent in getting in the way of it. Hence it would seem to be plain that, upon the theory that the plaintiff was unattended, the mother's negligence was to be imputed to him. However, I do not credit the statement of the older boy that he did not know that the plaintiff was with him until the latter was hurt. It seems to me that the more rational view to take of the evidence is that the plaintiff was intrusted to the custody of the older boy, in which case the latter's negligence is to be imputed to him. Hennessey v. Brooklyn City R. R. Co., 6 App. Div. 206, 39 N. Y. Supp. 805; Mangam v. Brooklyn R. R. Co., 38 N. Y. 455, 98 Am. Dec. 66; Lannen v. Albany Gaslight Co., 44 N. Y. 459. It is difficult to escape the conclusion that the older boy, knowing that the barrel was to be dropped from the loft, was negligent for allowing the plaintiff to get in the way of it; and there is certainly more reason to impute

the negligence to the custodian, immediately contributing to the accident, than the more remote negligence of the parent in allowing the child to go unattended. It is true that that view was not submitted to the jury, and is not presented to us by an exception. I refer to it to show that the negligence, either of the mother or of the immediate custodian, is to be imputed to the plaintiff, and that he was identified with the errand, resulting in his injury, and with those receiving the charity. He was not an outsider, a mere passer-by in the street. While the doctrine of identification, as broadly applied to the question of imputed negligence in Thorogood v. Bryan, 8 C. B. 115, has been repudiated (Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652), it seems to me that, in a restricted sense, it does bear on the question of the defendant's responsibility to the plaintiff, as in Waite v. N. E. Railway Co., El. Bl. & El. (96 Eng. Com. Law) 719–728.

We come, then, to the interesting and novel question whether the defendant is answerable to the plaintiff for the wrongs of the former's servant, committed in the act of rendering gratuitous service to those with whom, and in a transaction with which, the plaintiff was identified, assuming that the servant was authorized to render the service. I cannot find that the point has been decided. The cases dealing with the liability of charitable corporations for the acts of servants are analogous, but the reasons commonly given for nonliability to the recipients of the charity in that class of cases are not applicable, although in reason a charitable corporation and an individual doing charitable work ought to be in the same class, respecting the application of the rule respondeat superior; and the reasons given by the courts for the decision in those cases do not preclude a reason applicable to both. See Kellogg v. Church Charity Foundation, 128 App. Div. 214, 112 N. Y. Supp. 566.

The cases of passengers riding gratuitously may be thought analogous, but they belong to a class by themselves, Certain duties of the carrier spring from the relation of carrier and passenger, once that relation is found to exist, and the cases resting upon the negligent discharge of a duty cast upon or assumed by a party do not involve the rule respondeat superior, although some of the opinions appear to assume that they do. Once the duty is shown, it matters not by what agency the party attempts to discharge it. Ever since the leading case of Coggs v. Bernard, 2 Ld. Raym. 909, one undertaking gratuitously to discharge a duty has been held accountable for the manner of its discharge, though the fact that the service is gratuitous may be considered on the question of the degree of care required. Shiells v. Blackburne, 1 H. Bl. 159. It should be said in passing that the dictum in Lannen v. Albany Gaslight Co., 44 N. Y. 465, supra, is supported by references which deal with the principle of Coggs v. Bernard, and not with the rule respondeat superior. One of the leading cases in this country on the liability of a common carrier to a gratuitous passenger was decided on the principle of Coggs v. Bernard (Phila. & Reading R. R. Co. v. Derby, 14 How. 468, 14 L. Ed. 502), and it would seem that what was said in the latter case respecting the rule respondeat superior was unnecessary to the decision, because, if the principle of Coggs v. Bernard applied, it was unnecessary to invoke that rule.

This case is not altogether unlike the case where a servant is temporarily loaned, it matters not for how brief a time. See Wood v. Cobb, 13 Allen (Mass.) 58; Hasty v. Sears, 157 Mass. 123, 31 N. E. 759, 34 Am. St. Rep. 267. The master in this case allowed the servant temporarily to serve others, much as the engineer in Olive v. Whitney Marble Co., 103 N. Y. 292, 8 N. E. 552, volunteered to assist those testing the boiler; if the master had actually assented to the rendering of that service, the case would have been the same; but perhaps this case has to be distinguished by the fact that the master did not part with the control of the servant, at least upon a view of the evidence which it was possible for the jury to take; and we may assume for the purposes of this case that the master would have been liable to a passer-by in the street, injured by Murtha's negligent act.

However, the defendant has been held liable for Murtha's wrong, not for his own breach of duty, and the question is whether the rule respondeat superior is to be applied as between the recipient of a charity and the donor. The maxim, "Qui facit per alium, facit per se," frequently quoted in connection with that rule, does not solve the difficulty, because, strictly interpreted, it only applies to an act in fact, and not impliedly, authorized, whereas the rule is applied to acts done without authority and even in disobedience of positive orders. Under the Roman law, from which the rule was borrowed, the master was personally liable only for the wrongs of his slave committed by his orders or which he could have prevented. 1 Bevan on Negligence (2d Ed.) 687, and references. Wrongs are rarely authorized in fact; but, under the rule as now applied, the master is not permitted to deny that the act was done by his order, if done within the course of the employment in the furtherance of the master's business. We must, then, ascertain the reason for the extension of the rule; but we find upon examining the cases that judges have usually contented themselves with a statement of what they deemed to be the rule, or have stated the rule as the reason for it. In one of the earliest reported English cases on the subject (Turberville v. Stampe, 1 Ld. Raym. 264), Lord Holt, who delivered the judgment in Coggs v. Bernard, assigned as a reason for holding the master liable on the ground of implied authority that the servant's act was "for his master's benefit." In Barwick v. English Joint-Stock Bank, 2 L. R. (Ex.) 259, said by Sir Frederick Pollock to be a classical authority (Pollock on Torts, 75), Willes, J., thus states the rule:

"The general rule is that the master is answerable for every such wrong of the servant or agent as is committed in the course of the service and for the master's benefit, though no express command or privity of the master be proved."

That statement of the rule has frequently been quoted and referred to with approval. See British Mutual Banking Co. v. Charnwood Forest R. Co., L. R. Q. B. (1887) 715; Limpus v. London General Omnibus Co., 1 Hurlst. & C. (Ex.) 526–540. The Court of Appeals have thus stated the rule:

"The maxim respondeat superior applies, provided only that the agent was acting at the time for the principal, and within the scope of the business in-

trusted to him." Higgins v. Watervliet Turnpike Co., 46 N. Y. 23–27, 7 Am. Rep. 293; Rounds v. D., L. & W. R. R. Co., 64 N. Y. 129–133, 21 Am. Rep. 597.

"The rule * * * is that for the acts of the servant, within the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance of that business and the master's interest, the master will be responsible, whether the act be done negligently, wantonly, or even willfully." Mott v. Consumers' Ice Co., 73 N. Y. 543.

In the case of alleged willful or reckless acts, the test is whether the act was done within the general scope of the employment and with a view to the furtherance of the master's business, or whether the servant did it to effect some other purpose, without having the master's interest or service in mind. Magar v. Hammond, 183 N. Y. 387–390, 76 N. E. 474, 3 L. R. A. (N. S.) 1038. Though in a general sense Murtha's act was done while he was engaged in the master's business, strictly it was not done for the master's benefit, in the furtherance of the master's business, or in the master's interest; but it was done wholly in the interest and for the benefit of those with whom the plaintiff was identified. Thus the foregoing rules, literally construed, would not fit this case. Murtha was not employed to give away wood; but, in the course of the work for which he was employed, he was authorized to do that. However, in doing it, I think he was acting for the master, provided the latter, desiring to give the wood to the poor people in the neighborhood, authorized Murtha to act for him; and I think the courts have used the words "benefit" and "interest" in a broader sense than that of personal advantage or gain. For the purposes of this case, I think the defendant may be deemed to have been engaged in the charitable work or business of giving away wood, and that, upon one view of the evidence, Murtha's act may be regarded as done within the course of his employment, in the furtherance of the master's business and to serve the latter's purposes. In a legal sense, an act may be deemed to be for the master's benefit when it serves his purposes. Thus the case is brought within the rule, unless the reason for the rule excludes it. No precise statement of the reasons for the rule appears to have been attempted, although many expressions may be found indicating the trend of thought. Expressions may be found to the effect that the rule is founded on considerations of public policy, that business has to be conducted by means of agents, that corporations can act only through agents, and that, if the master were permitted to shield himself behind secret instructions, he could always evade liability. I think that the rule has been adopted of necessity as the only workable rule to make men answerable for the conduct of their own affairs, much as principals are held liable on the unauthorized contracts of their agents, made within the scope of the latter's authority. But there are no considerations of policy, justice, or necessity for applying it to a case like this; and the fact that it has not been extended to such a case, if I am right in that assumption, is a cogent reason for thinking that it does not apply. When we come to separate the cases depending strictly on the rule respondeat superior from those resting on the breach of some duty, we see that the former class embrace cases between strangers, the latter those between persons sustaining relations from which correlative rights and duties spring—persons in privity, as some of the cases say. That view was

adopted by Shaw, Ch. J., as the reason for holding that the rule respondeat superior did not apply between master and servant. Farwell v. Boston & Worcester R. R. Corporation, 4 Metc. (Mass.) 49, 38 Am. Dec. 339. His able opinion in that case has often been quoted; it was incorporated by the reporter in one of the English reports (3 Macq. 316), and it received the unreserved indorsement of the Court of Appeals in the leading case in this state on that subject (Coon v. Syracuse & Utica R. R. Co., 5 N. Y. 492). I think that later decisions show a tendency to lose sight of the sound reason on which Chief Justice Shaw placed the fellow-servant doctrine, and to put it on the vague ground of public policy, though Rapallo, J., in the leading case of Crispin v. Babbitt, 81 N. Y. 516–521, 37 Am. Rep. 521, plainly perceived and approved of the former reason. In Keegan v. Western R. R. Corporation, 8 N. Y. 175, 59 Am. Dec. 476, Ruggles, Ch. J., distinguished between an injury to a passenger on a railroad and to a servant of the railroad, and said that, in the former case, the negligence of the servant was imputed to the master on the ground of public policy, overlooking the fact that the liability of the carrier did not depend on imputed negligence, but on breach of duty. In the dissenting opinion of Earl, J., in Crispin v. Babbitt, 81 N. Y. 528, 37 Am. Rep. 521, supra, it is stated that, "as the master's responsibility has been extended by the doctrine of respondeat superior from considerations of public policy, so that doctrine has been limited by similar considerations in respect to the master's responsibility to his servants"; and Church, Ch. J., in Flike v. Boston & Albany R. R. Co., 53 N. Y. 549–552, 13 Am. Rep. 545, quoting from the opinion of Pratt, J., in Coon v. Syracuse & Utica R. R. Co., 6 Barb. 231–235, says that:

"The rule respondeat superior does not itself spring directly from principles of natural justice and equity, but has been established upon principles of expediency and public policy for the protection of the community; and that, in view of the unjust consequences which may ensue from its application for injuries by co-servants, the same principles of public policy demand its limitation."

Whether the decision in this case is put on the vague and unsatisfactory reason of public policy, or upon the firm ground on which Chief Justice Shaw based the fellow-servant doctrine, the same result will be reached. The plaintiff, those with whom he was identified, and the defendant were not strangers. They stood in the relation of donor and donee. One for whom another's servant is rendering a gratuitous service cannot reasonably expect the master to be liable for the servant's negligence. There can certainly be no principle of natural justice which would require one engaged in charitable work to be liable to the recipients of his charity for the wrongs of others. If he use reasonable care in the selection of the means and is guilty of no wrong himself, he ought not to be answerable to those who accept the charity for the wrongs of servants whom he has to employ to make it effective. There are certainly as strong, if not stronger, reasons for holding the recipient of a charity to have assumed the risk of the negligence of the donor's servant, as there are for holding a servant to have assumed the risk of a fellow servant's negligence. It is shocking to one's sense of right and wrong to hold a defendant liable upon the facts disclosed

in this case. The reasons for the extension of the rule respondeat superior, so far as they can be gleaned from the books, do not require it, and, in the absence of controlling authority, we should not extend the rule to such a case.

The judgment should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.

JENKS, J. My concurrence is confined to the first ground stated in the opinion of MILLER, J. I think that the liability of the master for the negligence of his servant may be found, notwithstanding that negligence is incident to a voluntary, gratuitous, or charitable undertaking of the master.