## GEORGE CRISPIN, Respondent, v. BENJAMIN T. BABBITT, Appellant.

The liability of a master for an injury to an employe, occasioned by the negligence of another employe, does not depend on the grade or rank of the latter, but upon the character of the act, in the performance of which the injury arises.

If the act is one pertaining to the duty the master owes to his servants, he is resposible to them for the manner of its performance ; but if the act is one pertaining only to the duty of an operative, the employe performing it, whatever his rank or title, is a mere servant, and the master is not liable to a fellow-servant for its improper performance. (EARL, DANFORTH and FINCH, JJ., dissenting.)

In an action to recover damages alleged to have been occasioned by defendant's negligence, it appeared that plaintiff was a laborer employed in defendant's iron works, which, as plaintiff's evidence tended to show, were under the management and control of one B., defendant himself not living in the place where the works were located, and only occasionally visiting them. At the time of the accident, plaintiff was at work near an engine, when B. carelessly let on steam and plaintiff was injured. The court charged that although B., as agent or superintendent, represented and stood in the place of defendant, he did so only in respect to those duties which defendant had confided to him as such. Defendant's counsel then requested the further charge, that as to any other acts or duties performed by B., in and about defendant's works or business, he was not to be regarded as defendant's representative, but as a fellow-servant with plaintiff. This the court refused to charge, but left it as a question of fact to the jury. *Held* (EARL, DANFORTH and FINCH, JJ., dissenting) error ; that it was a question of law, and the court should have charged as requested.

The court was also requested, and refused, to charge that in letting on the steam B. was not acting in defendant's place. *Held* (EARL, DANFORTH and FINCH, JJ., dissenting) error.

(Argued June 2, 1880 ; decided September 21, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict, and affirming an order denying a motion for a new trial.

This action was brought to recover damages for injuries alleged to have been sustained by defendant's negligence.

At the time of the accident, plaintiff was working as a laborer in the iron works of the defendant, at Whitesboro, Oneida county. Plaintiff had assisted to draw a boat into a dry dock connected with the works; after the boat was in the dry dock, it became necessary to pump out the water; this was done by means of a pump, worked by an engine. While plaintiff, with others, was engaged in lifting the fly wheel of the engine off its center, one John L. Babbitt carelessly let the steam on and started the wheel, throwing the plaintiff on to the gearing wheels, and thus occasioning the injuries complained of. Defendant lived in the city of New York, coming about once a month, for a day or two, to the iron works, of which, as the evidence tended to show, said Babbitt had general charge; being at one time the general superintendent and manager, at another time styled the "business and financial man." The substance of the evidence, as to the position occupied by Babbitt, and the particulars as to the accident, are fully set forth in the dissenting opinion of EARL, J. The defendant's counsel requested the court to charge, among other things, as follows:

"13th. That although John L. Babbitt may, as financial agent or superintendent, or overseer or manager, have represented defendant and stood in his place, he did so only in respect of those duties which the defendant had confided to him as such agent, superintendent, overseer or manager."

The court so charged.

"14th. That as to any other acts or duties performed by him in or about the defendant's works at Whitesboro, or in or about the defendant's business at said works, he is not to be regarded as defendant's representative, standing in his place, but as an employe or servant of the defendant, and as a fellow-servant of the plaintiff."

The court refused so to charge, saying: "I will leave that as a question of fact for the jury."

"17th. That if John L. Babbitt did let on the steam while plaintiff was engaged at the wheel, he was not, in so doing, act-

ing in the defendant's place, but his act in so doing was his own act, and not the act of the defendant."

The court refused so to charge, leaving this also for the jury.

To the refusals to charge, defendant's counsel duly excepted.

*A. J. Vanderpoel* for appellant. *Prima facie* John L. Babbitt and plaintiff were fellow-servants, and the *onus* of rebutting this inference, by evidence that they were not, was upon plaintiff. What actual authority was conferred upon John L. Babbitt, by defendant, was a part of plaintiff's affirmative case. (*Conway* v. *Belfast Railway*, 11 Irish C. L. 345, 353.) The evidence did not show that he had any authority from the defendant with reference to the control of the men and of the work in that establishment, which made him the defendant's *alter ego*. (*Malone* v. *Hathaway*, 64 N. Y. 5–9 ; *Loring* v. *N. Y. C. R. R. Co.*, 49 id. 521.) John L. Babbitt and the plaintiff were in the same general employ, although not equal in relation and authority. (*Wilson* v. *Merry*, L. R., 1 Scotch & Div. Appeals, 326 ; *Malone* v. *Hathaway*, 64 N. Y. 5–9 ; *Beyel, Admr.*, v. *N. Y. C. & H. R. R. R. Co.*, 70 id. 171.) The facts being undisputed, whether a person causing an injury to another is to be regarded as a fellow-servant with the person injured, is matter for the determination of the court. (*Marshall* v. *Schmeidler*, 63 Mo. 308 ; *Albro* v. *Agawam Canal Co.*, 6 Cush. 75 ; *Farwell* v. *Boston & Worc. R. R.*, 4 Metc. 49 ; *Hayes* v. *Western R. R.*, 3 Cush. 270.) There is no distinction as to the exemption of a common employe from liability to answer for an injury to one of his workmen from the negligence of another in the same employment, in consequence of their being workmen of different classes. (*Conway* v. *Belfast & N. C. Ry.*, 11 Irish C. L. 345–353.) In the varying ranks or grades of servants the power of one to command, to employ, or even to dismiss others, and the obligation of those others to perform the lawful commands of the first, are not sufficient to prevent all being fellow-servants. (*Keilly* v. *Belcher Co.*, 3 Sawyer, 500 ; *Howells* v. *Landore Steel Co.*, L. R., 10 Q. B. 62 ; *Sherman* v. *Rochester & Syracuse R. R.*,

17 N. Y. 156; *Brown* v. *Maxwell,* 6 Hill, 592; *Laning* v.
*N. Y. C. R. R.,* 49 N. Y. 521; *Hofnagle* v. *Same,* 55 id. 608.)
The proof fails to show any negligence toward the plaintiff on
the part of the defendant, and the nonsuit should have been
granted. (*Metropolitan Ry. Co.* v. *Jackson,* L. R., 3 Appeal
Cases, 193, 197; *Bridges* v. *North Lon. Ry. Co.,* L. R., 7 H. L.
213.)   In actions for injuries sustained by reason of an incom-
petent fellow-servant, the presumption is that the fellow-ser-
vant was not incompetent, and that the master was not negli-
gent in employing him in his employment. (*Wright* v. *N. Y.,*
*etc., R. R. Co.,* 25 N. Y. 562; *Davis* v. *Detroit R. Co.,* 20
Mich. 105.)   The fact of the happening of this accident was
not sufficient to charge the defendant. (*Albro* v. *Agawam*
*Canal Co.,* 6 Cush. 75; *Felch* v. *Allen,* 98 Mass. 572; *Smith*
v. *Lowell Manuf. Co.,* 124 id. 114; *Winterbottom* v. *Wright,*
10 M. & W. 114; *Hayden* v. *Smithville Manuf. Co.,* 29 Conn.
548; *Sexton* v. *Hawksworth,* 26 L. T. R. 851.)

*Nicholas E. Kernan* for respondent.   The defendant was
guilty of negligence. (*Laning* v. *N. Y. C. R. R. Co.,* 49 N.
Y. 521; *Flike* v. *B. & A. R. R. Co.,* 53 id. 549; *Corcoran*
v. *Holbrook,* 59 id. 517; *Malone* v. *Hathaway,* 64 id. 5; *Coombs*
v. *New Bedford Cordage Co.,* 102 Mass. 572; *Ford* v. *Fitch-*
*burg R. R. Co.,* 110 id. 240; *O'Connor* v. *Adams et al.,* 120
id. 427; *Mullen* v. *Phila. & So. M. Steamship Co.,* 78 Penn.
St. 25; 21 Am. Rep. 2; *Mehan* v. *Syracuse & B. R. R. Co.,*
9 Hun, 457, and 73 N. Y. 585; *Gage* v. *D. L. & W. R. R. Co.,*
14 Hun, 446; *Murphy* v. *Smith,* 19 C. B. [N. S.] 361; *Buck-*
*ner* v. *N. Y. C. R. R. Co.,* 2 Lans. 506, affirmed by this court,
49 N. Y. 672; *Lalor* v. *Chicago, B. & Q. R. R. Co.,* 52 Ill.
401; *Patterson* v. *P. & N. R. R. Co.,* 76 Penn. St. 389.)
The act of John L. Babbitt in turning on steam while the
plaintiff was lifting on the fly-wheel was negligence, and was
the direct negligence of the defendant, for John L. Babbitt
was the "*alter ego*" of the defendant. (*Corcoran* v. *Holbrook,*
59 N. Y. 517; *Malone* v. *Hathaway,* 64 id. 5; *Mullen* v.
*Phila. & So. M. Steamship Co.,* 78 Penn. St. 25; 21 Am.

Rep. 2; *Berea Stone Co.* v. *Craft*, 31 Ohio St. 287; *Pittsb., F. W. & C. Ry. Co.* v. *Lewis*, 33 id. 196; Wheaton's Law of Negligence, §§ 229, 230; Shearman & Redfield on Negligence, §§ 102, 103, 104; *Brothers* v. *Cartter*, 52 Mo. 378; *Ford* v. *Fitchburg R. R. Co.*, 110 Mass. 240, 260; *Murphy* v. *Smith*, 19 C. B. [N. S.] 361; *Conway* v. *Belfast & N. C. Ry. Co.*, 9 Ir. L. T. R. 217.) It was for the jury to say whether, upon the evidence in this case, John L. Babbitt was the fellow-servant of the plaintiff or the "*alter ego*" of the defendant. (*Malone* v. *Hathaway*, 64 N. Y. 5, 11; *Mullen* v. *Phila. & So. Mail Steamship Co.*, 78 Penn. St. 25; 21 Am. Rep. 2; *Pittsb., F. W. & C. Ry. Co.* v. *Lewis*, 33 Ohio St. 196.) There was no evidence to show that John L. Babbitt had acted so "willfully and ma-liciously" as to exempt the defendant from liability. (*Rounds* v. *Del., Lack. & West. R. R. Co.*, 64 N. Y. 129; *Mott* v. *Consumers' Ice Co.*, 73 id. 543; *Rexter* v. *Starrin*, 73 id. 601.)

RAPALLO, J. The liability of a master to his servant for injuries sustained while in his employ, by the wrongful or negligent act of another employe of the same master, does not depend upon the doctrine of *respondeat superior*.

If the employe whose negligence causes the injury is a fellow-servant of the one injured, the doctrine does not apply. (*Conway* v. *Belfast, etc., Ry. Co.*, 11 Irish C. L. 353.)

A servant assumes all risk of injuries incident to and occurring in the course of his employment, except such as are the result of the act of the master himself, or of a breach by the master of some term, either express or implied, of the contract of service, or of the duty of the master to his servant, viz.: to employ competent fellow-servants, safe machinery, etc. But for the mere negligence of one employe, the master is not responsible to another engaged in the same general service.

The liability of the master does not depend upon the grade or rank of the employe whose negligence causes the injury. A superintendent of a factory, although having power to employ men, or represent the master in other respects, is, in the management of the machinery, a fellow-servant of the other

operatives. (*Albro* v. *Agawam Canal Co.*, 6 Cush. 75; *Conway* v. *Belfast Ry. Co.*, *supra;* Wood's Master and Servant, § 438. See, also, §§ 431, 436, 437.) On the same principle, however low the grade or rank of the employe, the master is liable for injuries caused by him to another servant, if they result from the omission of some duty of the master, which he has confided to such inferior employe. On this principle the *Flike case* (53 N. Y. 549) was decided. CHURCH, Ch. J., says, at page 553 : " The true rule, I apprehend, is to hold the corporation liable for negligence in respect to such acts and duties as it is required to perform as master, without regard to the rank or title of the agent intrusted with their performance. *As to such acts* the agent occupies the place of the corporation, and the latter is liable for the manner in which they are performed."

The liability of the master is thus made to depend upon the character of the act in the performance of which the injury arises, without regard to the rank of the employe performing it. If it is one pertaining to the duty the master owes to his servants, he is responsible to them for the manner of its performance. The converse of the proposition necessarily follows. If the act is one which pertains only to the duty of an operative, the employe performing it is a mere servant, and the master, although liable to strangers, is not liable to a fellow-servant for its improper performance. (Wood's Master and Servant, § 438.) The citation which the court read to the jury from 21 Am. Rep. 2, does not conflict with, but sustains this proposition ; it says : " Where the master places the entire charge of his business in the hands of an agent, the neglect of the agent *in supplying and maintaining suitable instrumentalities for the work required is a breach of duty for which the master is liable.*" These were masters' duties. In so far as the case from which the citation is made goes beyond this, I cannot reconcile it with established principles. In England, by a late act of Parliament, the rules touching the point now under consideration have been modified in some respects, but in this State no such legislation has been had.

The point is sharply presented in the present case, by the 13th, 14th and 17th requests to charge. 13th. That although John L. Babbitt may, as financial agent or superintendent, overseer or manager, have represented defendant, and stood in his place, he did so only in respect of those duties which the defendant had confided to him as such agent, superintendent, overseer or manager.

This the court charged.

14th. That as to any other acts or duties performed by him in and about the defendant's works or business at said works, he is not to be regarded as defendant's representative, standing in his place, but as an employe or servant of the defendant, and a fellow-servant of the plaintiff.

This the court refused to charge, but left as a question of fact to the jury, and defendant's counsel excepted. I think this was a question of law, and that the court erred in submitting it to the jury, but should have charged as requested.

The court was further specifically requested to charge that in letting on the steam John L. Babbitt was not acting in defendant's place. This, I think, was a sound proposition, as applied to the present case. It was the act of a mere operative for which the defendant would be liable to a stranger, but not to a fellow-servant of the negligent employe. As between master and servant it was servant's, and not master's duty to operate the machinery.

The judgment should be reversed.

EARL, J. (dissenting). This is an action for injuries alleged to have been received by the plaintiff through the negligence of the defendant. At the time he received the injuries he was a laborer in the employment of the defendant at his iron works in Oneida county. He was at work about an engine, and one John L. Babbitt, also in the employment of the defendant, carelessly let on the steam, and in consequence thereof the injuries were caused. The defense now claimed is that John L. Babbitt was a fellow-servant of the plaintiff, and that the defendant is not, therefore, responsible for his negligence. Whether John was

a fellow-servant merely, or a representative of the defendant in such sense as to make the latter responsible for his acts, is the sole question upon the merits now to be considered.

It is not easy always to determine whether the person immediately causing the injury is to be regarded as a fellow-servant or not; and the rules laid down upon the subject in England and in the various States of this country are somewhat discordant. The subject, in many of its phases, has been so thoroughly treated in various decisions in this court that much writing thereon now is not needed. (*Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 521; *Flike* v. *B. & A. R. R. Co.*, 53 id. 549; *Hofnagle* v. *N. Y. C. & H. R. R. R. Co.*, 55 id. 608; *Malone* v. *Hathaway*, 64 id. 5; *Besel* v. *N. Y. C. & H. R. R. R. Co.*, 70 id. 171.) These cases show that the relation of one servant to another is not determined by the fact that one has a superior position to the other, or has some control over other servants or some management of the business in hand. To place a servant in a position where the master will become responsible for his negligence to other servants, he must *pro hac vice* be in the place of the master, and his representative. In other words, to use a phrase found in some of the books, he must be the *alter ego* of the master. He need not, however, have all the powers which the master would have if present, nor all the powers of an absolutely general agent; but he must either be clothed with the general powers and charged with the general duties of the master, or he must, for the work in hand at least, be the superior whose commands are to be obeyed, whose acts are not to be questioned by other servants, and who thus for the time being represents the master. And whether a servant whose acts are complained of occupies such a position to other servants is a question of fact to be determined, when disputed, upon sufficient evidence, by a jury. (*Mullan* v. *Philadelphia and Southern Mail Steamship Co.*, 78 Penn. 25.)

In this case the law was laid down by the judge in his charge favorably enough to the defendant, in the following language: "If you find that John L. Babbitt had the control, standing

really in the footsteps of his principal; had a right to discharge all the duties and every thing that took place at this establishment; had it in his hands, so that he was, although not the owner, really acting for the owner, and the owner being away from home, doing all the business generally in that establishment; then you will look into all this evidence in regard to the negligence of John L. Babbitt, and whether his negligence caused the injury."

The question, therefore, is whether there was some evidence tending fairly to show, and which authorized the jury to find, that John L. Babbitt occupied the place of the defendant, in the sense above stated.

The defendant's iron works were at Whitesboro, Oneida county. He lived in New York and carried on an extensive business there. He visited his works about once a month and stayed a day or two. There were employed in and about his works a large number of men. John L. Babbitt was his nephew, and lived at Whitesboro in a house belonging to the defendant; and when the latter visited his works, he usually made that house his home. John was a practical engineer. When he first went to Whitesboro, he was placed in charge of the works and was the general superintendent and manager, having foremen under him. Some time before the accident which injured the plaintiff, John testified that one Minot was appointed by the defendant foreman of the works. Precisely what his powers were was not shown. Although near at hand at the time of the trial, he was not called as a witness; neither was the defendant called. The claim is that Minot superseded John in the practical management of the works; and yet, in the temporary absence of Minot, it is not disputed that John was in control, as he was after Minot left the employment of the defendant, without, so far as appears, any new delegation of authority. Substantially all the correspondence of the defendant in reference to his works was carried on with John, and John was the medium of communication between the defendant and others connected with the works, when the defendant was absent. John employed and discharged laborers,

bought and paid for material, and paid the laborers, and reported to the defendant whatever he noticed about the works which he deemed it important for him to know. Prior to the accident, there were posted in the works printed rules and regulations to be observed by the workmen, which were signed as follows: " B. T. Babbitt, proprietor; H. P. Minot, foreman of the works ; John Babbitt, business and financial man." What was meant by " business and financial man ? " The meaning of these words was, under all the circumstances, to be determined by the jury. They certainly will bear the interpretation that John was in the charge of the business there carried on, and had the financial management thereof. As to the facts thus far stated, there was substantially no dispute. There was also proof tending to show that John was understood by the workmen to be the head man there, whose orders were to be obeyed, and that when he chose to he ordered the men about their work, and that he had the general oversight of the work. Upon all these facts, giving due weight to the circumstance that the defendant resided nearly two hundred and fifty miles from his works, which he rarely visited, and that unless it was John Babbitt, there was no local manager and general superintendent of a very extensive business in the absence of the principal, we think the jury were authorized to find that John, at the time of the accident, occupied the place of the defendant, within the law as hereinbefore stated. It is undisputed that Minot was " foreman of the works " — whatever that may mean. He may have been foreman in the sense that he was a skilled machinist having the direction of the laborers and the execution of the work ; and yet the inference was authorized that he was subordinate to John, from whom, in the absence of the defendant, he received his general directions.

It is suggested that John was not in the line of his duty, when he interfered with the engine at the time of the accident, and that in that act he did not represent or stand in the place of the defendant. Just before the accident, John had ordered the plaintiff and other laborers to put a canal boat into defendant's dry dock and under his direction they did so. After the

boat was thus placed, it was necessary to pump the water out of the dock; and there was for that purpose a pump worked by this engine; and the plaintiff and others went to start the pump, and while they were thus engaged, and meeting with some difficulty, John came and let the steam on the engine, for the purpose of aiding them. The suggestion is, that while he may have been the general superintendent and manager of the defendant, standing in his place for other purposes, in this act he was a fellow-servant of the plaintiff. The rule is claimed to be, that, where a middleman, by the appointment of the master, exercises the executive duties of master, as in the employment of servants, and in the selection of machinery, apparatus, tools, structures, appliances and means suitable and proper for the use of other and subordinate servants, then his acts are the acts of the master, for which the master is responsible; but that when such middleman does a mere mechanical act which any laborer could do, or labors with other laborers, his negligence while thus acting is the negligence of a co-laborer, which imposes no liability upon the master to a co-laborer injured by such negligence; that the middleman, therefore, occupies a dual position, that of a co-servant as to all matters within the scope of the employment and the discharge of such duties as are not personal to, or absolute upon, the master, and as a vice-principal as to all matters where he abuses his authority, or is charged with the discharge of duties which the master himself should have discharged, or which rest upon the master as absolute duties. I have made a thorough examination of the reported cases in this country and in England, and think I may safely affirm that there is no case in which the question was involved, where this dual relation has been recognized and the rule thus laid down. The rule is thus stated in Wood's Master and Servant, §§ 438, 451 and 453; and there is a dictum to the same effect by Judge POTTER in *Brickner* v. *The N. Y. C. R. R. Co.* (2 Lans. 506, 516). The only case I have been able to find in which the precise point was involved and decided is that of *Berea Stone Co.* v. *Kraft* (31 Ohio St. 287). In that case Kraft was a laborer in a stone quarry of the com-

pany, and one Stone was the agent of the company and foreman of its quarry. Stone carelessly and improperly fastened certain hooks to a soft stone, for the purpose of raising it with a derrick about which Kraft was also engaged, and the hooks broke away from the stone and fell, injuring Kraft, who then brought suit against the company to recover his damages. At the close of the evidence, the counsel of the company requested the trial judge to charge: First, "That a corporation is liable to an employe for negligence or want of proper care in respect to such acts and duties as it is required to perform as master or principal, without regard to the rank or title of the agent intrusted with their performance:" Second, "That if the injury happened by the negligence of the defendant's foreman, when he was doing the work of a co-laborer with the plaintiff, and not when in the discharge of his duties as foreman and representative of the defendant, the plaintiff cannot recover, unless the plaintiff shows that the defendant did not exercise reasonable care and prudence in the selection of a foreman." Both requests were refused, and the refusal was held to be proper. BOYNTON, J., writing the opinion of the court, said: "The fact, if it be true, that Stone's negligence in assisting in fastening the hooks to the stone to be raised may have caused the injury, and that he was then performing the duty of a common workman, and not those strictly pertaining to the duties of foreman, in no wise relieves the company from liability. If the act done by him had been done under his direction, as he did it, by one of the employes of the company, its liability could not be doubted, and for the reason that the negligent act, although committed by the hand of another, was, in law, the act of the foreman, and consequently the act of the master. And it could be no less the act of the master when performed by the foreman in person."

It is the general rule, founded on principles of natural justice, that every person shall be responsible only for his own personal wrongs, including such as he employs or directs another to commit. If one selects a suitable agent to do a lawful and proper act, and is guilty of no negligence in making

the selection, or in directing and instructing his agent, and the agent does a negligent or wrongful act, causing injury to another, there is no principle of natural law or abstract justice by which the master can be held responsible for such injury. Judged by such standard, the wrong-doer alone must respond. (Wharton's Law of Negligence, §§ 156, 157; *Coon* v. *The S. & U. R. R. Co.*, 6 Barb. 231; *Flike* v. *B. & A. R. R. Co., supra; Farwell* v. *B. & W. R. R. Co.*, 4 Metc. 49, 56.) The doctrine of *respondeat superior* has its foundation in public policy. SHAW, Ch. J., in the case last cited, said that it is adopted "from general considerations of policy and security." It has been deemed the wisest and safest rule, that the master who selects the servant and puts him in motion, and reaps the benefit of his labor, should be held responsible for negligent and wrongful acts committed in his service. To enforce the responsibility of the master, the rule has sometimes been invoked that where one of two innocent parties must suffer by the wrongful act of a third party, he must bear the burden of loss who placed the third party in the position which enabled him to commit the wrong. But it is held in England, and in most of the States of this country, that the responsibility of the master employing several servants should not be so far extended as to make him liable for injuries sustained by one servant in consequence of the negligent acts of a co-servant engaged in a common business or employment. As the master's responsibility has been extended by the doctrine of *respondeat superior* from considerations of public policy, so that doctrine has been limited by similar considerations in respect to the master's responsibility to his servants. The limitation has no foundation in abstract or natural justice, and all attempts to place it upon any other foundation than that of public policy will prove unsatisfactory when brought to the test of careful and logical analysis.

As most of the enterprises of modern times, which contribute to human progress and the welfare of society, must be carried on by numerous servants working to the same end under common masters, it has been supposed that it would cast

upon a master too much responsibility to hold him liable for injuries, against which he could by no possibility guard, sustained by one servant from the negligence of a co-servant, and that the servants would be better protected if they were obliged to rely upon their own care and vigilance rather than those of the master. Hence, to enforce the supposed public policy, a fiction has been invented by which the servant is said to assume all the risks of the service in which he engages, which include the risks of injuries caused by the negligence of co-servants engaged in the same common employment. If this fiction were literally applied, if it were held that every servant entering into the service of a master assumed all the risks incident to such service, then the master would not be responsible to such servant for his own negligence, as that would be as much an incident to the service as the negligence of a co-servant. The maxim *volenti non fit injuria* would shield the master. But the fiction is not applied to shield the master. He is held responsible for his own negligence, whether engaged in the discharge of the duties peculiar to him as master or working side by side with his servants in the same kind of labor. So the fiction should not be applied to shield the master from responsibility for the negligence of the middleman standing in his place and representing him. Public policy does not require that the doctrine of *respondeat superior* should be thus far limited. It is not too much for the master to be responsible for his negligence. He is generally a person selected with care, of superior judgment and skill, and is more generally, than other servants, able to respond to his master for his own negligence. I can perceive no reason founded upon public policy, as there is none founded upon any principle of natural justice, for limiting the doctrine of *respondeat superior* in its application to the relation existing between a master and such an agent. The master should be responsible for all his negligence while engaged in his service, because he stands in his place representing him as his *alter ego ;* and I can perceive no reason founded on public policy or expediency for enforcing that doctrine in such a case in favor of strangers, which does not exist

for enforcing it in favor of the other servants of the common master.

A rule that a master shall be held responsible for some negligent acts of his representative, and not responsible for other negligent acts, done possibly at the same time, within the scope of his employment in the same service, would be illogical, perplexing and inconvenient. Take the case of a general superintendent of a railway. It is conceded that for negligence in his discharge of the absolute duties which a master owes to his servants, the master — the corporation — would be responsible. But suppose instead of such duties he should, in furtherance of his master's business, carelessly perform a mechanical act about which common laborers were also engaged, would there be any reason, founded upon principle or public policy, for distinguishing the two cases and imposing upon the master a liability in the one case and not in the other? Suppose the superintendent carelessly ordered a train to be started, and some one was thus injured, the corporation would undoubtedly be liable for the damages. Would it not be thus liable if, instead of ordering the train to be started by others, he placed his own hand to the lever and carelessly started it himself? Would he be the responsible representative of the corporation in the one case and not in the other? Suppose he was standing upon a train of cars and carelessly started that train himself, causing an injury to some one, and at the same moment of time he carelessly ordered an engineer to start another train, also causing an injury; would the corporation be liable for the damages in the one case and not in the other? The question in all this class of cases, the negligent act and consequent injury being proved, is whether the servant whose act is complained of stood in the place of the master — represented him as his *alter ego?* That is always mainly a question of fact. If he did, then the rule of law to be applied is plain and simple, and is the same which would measure the responsibility of the master to a stranger to his service.

On the one hand, it is claimed that in determining the responsibility of the master in such cases, we must look solely

at the duties which were devolved upon the servant whose acts are complained of, and that if we find that the duty which he was engaged in discharging when he committed the negligent act or wrong was one of those absolute duties which the master owed to his servants, then the master is responsible, no matter what was the grade or position of the servant. On the other hand, I claim the rule to be, that in determining the responsibility of the master for the negligent acts of his servant, we must look solely at the position of such servant, and we must consider the duties devolved upon him, solely for the purpose of determining such position, and if we find that he was the representative of the master, within the rules above stated, then the master must be held responsible for all his acts of negligence committed within the scope of the business intrusted to his hands, as well to co-servants as to strangers.

It cannot be claimed that what John L. Babbitt did was an idle thing, having no pertinency to the business in hand. If he was there in defendant's works, as we have assumed the jury found, standing in his place and having the general charge of his business, then he was empowered to do whatever he saw fit in and about that business and in furtherance of its objects. Whatever he could order or employ another to do, he could do himself. Did he represent the defendant when he ordered the laborers to put the boat into the dry dock, and not represent him a few minutes later when he put his hands to the engine to further the same work? If he had ordered another servant to do this careless act, the defendant would have been liable, and does the defendant escape liability because John did the act himself? I say, no.

Our attention has been called to some exceptions taken on the part of the defendant to the refusals of the trial judge to charge as requested. They have been substantially disposed of by the foregoing discussion, and need, therefore, no further attention.

The judgment should be affirmed.

FOLGER, Ch. J., ANDREWS and MILLER, JJ., concur with RAPALLO, J. DANFORTH and FINCH, JJ., concur with EARL, J.

Judgment reversed.