BARTHOLOMEW SCOTT, Respondent, *v.* ELIZABETH A. SWEENEY, JAMES J. SWEENEY and WILLIAM A. SWEENEY, Appellants.

*Liability of a master for an injury to a servant — when the negligence is to be treated as that of the master, and when as that of a fellow servant.*

The plaintiff was engaged with two other laborers, all employees of the defendants, in moving stone on a truck in the defendants' stone yard. While passing a derrick the boom fell, striking the plaintiff and causing the injury complained of in this action. It was claimed that the boom was lowered at that particular time in pursuance of the order of one Simpson, the defendants' foreman, who had charge of the derrick. The judge charged the jury that if Simpson had authority from the defendants to direct the operations of the derrick, then *pro hac vice* his orders were their orders; and if the order given by him to lower the boom was, under the circumstances of the case, a negligent one, then his negligence was that of the defendants and rendered them liable for the damages sustained by the plaintiff.

*Held*, that this was error; that the negligence, if any there were, of Simpson was the negligence of a co-employe and not that of the master. (BOCKES, J., dissenting.)

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury.

The action was brought to recover damages for injuries alleged to have been occasioned by the negligence of the defendants. The plaintiff was employed in the defendants' stone yard as a laborer. He was alleged to have been injured through the negligence of one Simpson, the defendants' foreman, by the lowering of the boom of a derrick.

*Alton B. Parker*, for the appellants.

*J. Newton Fiero*, for the respondent.

LANDON, J.:

Within the cases of *Crispin* v. *Babbitt* (81 N. Y., 516), and *Slater* v. *Jewett* (85 id., 63), I think it should have been held as a matter of law, upon the evidence, that Simpson, the foreman in charge of the defendant's yard and workmen employed therein, was, with respect to the act of lowering the boom of the derrick, whereby plaintiff was injured, a fellow servant of the plaintiff.

These cases point out with some clearness the test running through the previous cases, whereby we can determine whether the act, with respect to which negligence is alleged, is the act of the master or of the servant. Briefly stated, if the act is one which from its nature and character belongs or ought to belong to the department of the master, then it is the master's act, no matter to what inferior agent or servant the authorization, not the execution when authorized, of the act is intrusted. If, however, the act done or omitted is in the execution of the proper details of the principal work which has been by the master directed to be done, such execution of proper details is the act of the servant, no matter how high the rank of the subordinate who performs the labor. Illustrations taken from the cases may enable us to see more clearly the rule and its application. Whether train No. 50 shall be detained at Cayuga or be sent on to Auburn, is within the department of the master (*Sheehan* v. *N. Y. C. & H. R. R. R. Co.*, 91 N. Y., 334), but the detail work in taking it, if ordered, within the servant's department. So the giving a telegraphic order as to where two trains should meet was held in *Slater* v. *Jewett* to be the work of the master. The order was properly given and came to the hands of the conductor, who ought to have given it to the engineer, but forgot to do it. It was contended that the conductor was, for the purpose of communicating the order, *pro hac vice* the master. The court said no, the making of the order was the master's work, the delivering of it by the servant a detail of execution — the work of a servant. In *Crispin* v. *Babbitt*, the foreman who " represented the defendant and stood in his place," carelessly turned on steam whereby the plaintiff was injured ; it was held to be servant's work. Suppose instead of turning it on himself, a servant had done it by his direction, it is impossible to see that the rule could have been changed. It would still have been an executive detail, a matter of mere work or labor. And such seems to be the case under review. When Simpson said " lower the boom," he was carrying out his part of the details of his master's work, no less than the workman who turned the crank. He was operating the derrick, a work needing one servant to be watchful of details and so to direct the labor of others as to make it useful to their common employer, in moving stone from the yard to the mill. Whether a derrick,

or this particular derrick, was a proper machine to be used may be a question for the master to decide, but the work of operating it is servants' work. If therefore the plaintiff was injured by Simpson's negligence in operating the derrick, or in moving it out of the way, he was injured by the negligence of a fellow servant. I advise a reversal of the judgment.

LEARNED, P. J., concurred.

BOOKES, J. (dissenting):

The plaintiff had a recovery because of an injury received by him when in the defendants' employ, occasioned by the falling of a boom attached to a derrick used for the moving of stone.

The defendants were wholesale dealers in blue-stone, and had a yard in which they employed in this business some twenty-five or more persons as hired servants. The plaintiff, with two other fellow laborers, belonged to what was called the mill or laboring gang, and at the time of the accident they were working together. Their principal business was to take stone out of the way and to the rubbing mill.

A derrick was used to aid in handling stone when necessary or convenient. The workmen on the yard were under the immediate direction and control of Simpson, the defendants' overseer or foreman. The plaintiff, with his two co-laborers, were engaged in moving a stone on a truck, and in so doing they came under the derrick boom, or nearly so, when the boom fell, striking the plaintiff and causing the injury complained of. Simpson, the foreman, was present directing the work in person, and gave the order (as must be inferred from the verdict of the jury in plaintiff's favor on this question of fact) to lower the boom, the obeying of which order in its results produced the injury. The boom was controlled in its elevations and depressions by a rope fastened to it, and passing to the top, or nearly so, of the mast of the derrick, then down to a drum around which it passed in coils.

A leading and perhaps controlling question on this appeal grows out of the ruling of the learned judge at the circuit, as to the defendants' responsibility for the direction given by their foreman to lower the boom. It was urged by the defendants' counsel at the

trial that even if such direction or order was given by him under circumstances making it dangerous and improper to be given, it was but the negligence and improper conduct of a co-servant for which the defendants could not be held answerable. On the other hand it was insisted on the part of the plaintiff that the order of Simpson, the defendants' foreman, was in law the order of the defendants themselves. The learned judge ruled and so instructed the jury, that if Simpson had authority from the defendants to direct the operations of the derrick, then *pro hæc vice,* his orders were their orders; and if he gave directions to lower the boom so as to uncoil the rope beyond the point of safety, then the order, if a negligent one under the circumstances, was directly the negligence of the master. This ruling was elaborated in the charge somewhat, but it gives the rule of law on this point in pursuance of which the case was tried. We are of the opinion that in thus ruling the learned judge was entirely correct. It was left to the jury to find on the proof whether the defendants had given Simpson superintendence of the working of the derrick, with the right to direct and control the laborers in that regard. There was proof submitted on the point, and the jury were well authorized to find for the plaintiff on that question. It must be assumed that they found that Simpson had authority from the defendants to direct the operations of the derrick; that he was then in control of the workmen in their labors, holding the same authority over them as the defendants themselves would have held had they been present to direct. If such was his relation to the laborers engaged in moving the stone on the track, and also to those who might be directed by him to operate the derrick, the mere fact whether or not he could hire and discharge hands would not change the case as to the order given by him to lower the boom. It would nevertheless be the order of the defendants in whose place and stead he was acting by their authority. It seems that he was their overseer, their foreman, with entire control. It was laid down in *Sheehan* v. *New York Central and Hudson River Railroad Company* (91 N. Y., 334), that when the master delegates to another entire control over a particular branch or circumstance of his business, the person to whom such power is delegated stands in the place of the master as to all duties resting on him to his servants, and his

acts or omissions relating thereto are the acts or omissions of the master himself. See also *Chicago, Milwaukee and St. Paul Railroad Company* v. *Ross* (31 Alb. L. J., 12, 13), where the question is elaborately considered in the United States Court. The doctrine of a master's responsibility for an injury caused by the negligence of a co-servant does not as we think have application here, as regards the direction given by Simpson to lower the boom. If the order was a negligent one, a direction improper to be given under the circumstances of the case, the defendants must be held responsible for it, as much so as though given personally by themselves .

But it is insisted that the defendants' liability does not rest on this question alone ; that admitting that Simpson was a co-employe with the plaintiff, and also that the accident was caused *in part* by his negligence, still as there was evidence bearing upon the question, and a finding by the jury to the effect that the derrick was itself unfit for the use to which it was put, and that such unfitness contributed to the injury complained of, defendants' liability would follow. The proposition of law here put forward is unquestionably a sound one. It is the settled rule that as between master and servant it is the duty of the former to furnish the latter for use in the prosecution of his business good and suitable machinery and to keep it in repair ; and that responsibility on the part of the master will follow for an injury to the servant caused by the non-observance of such duty, the latter being without fault. And in connection with this it was laid down in *Cone* v. *Delhi, Schoharie and Western Railroad* (81 N. Y., 210), that "neither upon principle nor authority can it be held that negligence of the servant in using imperfect machinery excuses the principal from liability to a co-employee, for an injury which could not have happened had the machinery been suitable for the use to which it was applied ;" and it was added, "had the injury resulted solely from the servant's negligence the case would have been different." To the same effect is the decision in *Ellis* v. *New York, Lake Erie and Western Railroad Company* (95 N. Y., 546). But this case was not tried entirely on the theory of the propositions of counsel above put forward. As it was tried and sent to the jury for determination, the question whether Simpson held the position of master

was made an important, and, in one view of the case, a controlling one. As sent to the jury they might have found, and probably did conclude, that Simpson's position was that of master, and rendered the verdict as a result of such conclusion. Now, if the court instructed the jury erroneously on this subject, there should be a new trial for such error. But we think no error was committed in that regard. Our conclusion on this point is as above stated. After a careful examination of the case, we are of the opinion that the record is free from any error demanding a reversal of the judgment. In a general way it may be said that on all material questions of fact evidence was submitted, and the case was sent to the jury to be determined by them under a charge quite as favorable to the defendants as they have any right to claim. On proof making the remark pertinent to the case, the learned judge said to the jury: "If the accident happened in consequence of the insecure fastening of the rope to the drum, of which the defendants ought to have known, or did know, or if the security of the fastening the drum to the rope depended upon leaving on the drum a sufficient number of coils and not uncoiling it too far, and the uncoiling caused the fall, if plaintiff was free from contributory neglect, the defendants are responsible." These remarks covered the entire case, and in a more favorable light to the defendants, in some respects, than they could rightfully demand.

The order and judgment appealed from must be affirmed, with costs.

Judgment reversed, new trial granted, costs to abide event.