Barker, P. J.
—The husband of the plaintiff was killed while engaged as a workman for the defendants in their tile factory, caused by the breaking of a portion of the machinery used in driving a clay mill about which he was at work as a laborer. The accident was caused by the breaking of one of the iron bolts which held Up a friction wheel used to give motion to the mill. When the wheel was raised the mill was at rest, and when the wheel was lowered into position it set the mill in motion. The deceased got into the mill for a purpose connected with his duty, and while he was there the bolt broke, the wheel fell, the mill was started and he was killed.
The claim of the plaintiff is, that the machinery, as originally constructed, was defective and unsafe by reason of the mode and manner by which the rods used to raise the wheel were fastened.
The wheel weighed about 500 pounds, and in order to throw the mill out of gear it was necessary to lift the wheel about an inch, which was done by means of a lever to which the upper ends of the two rods were attached by means of an iron called a “Y.” The lower ends were tightly fastened into the upper plate of the wheel. Each time the lever was applied and the wheel raised and lowered the rods were subjected to a lateral strain backwards and forwards. The rods were two feet and six inches in length, and three-fourths of an inch in diameter, and made of wrought iron. The lateral strain caused by this deflection of the rods from a perpendicular line could have been easily remedied by the use of an eye bolt placed in some part of the rod, or by a slot in the arms of the lever. The evidence tended to prove that the lateral strain was *683 sufficient to produce granulation or crystalization of the iron and thus weakening the rods. After the break the rod was inspected, and it appeared that a partial granulation had taken place.
On a former trial the plaintiff was non-suited by the trial judge, and the same was set aside by this court and a new trial granted, on the ground that upon all the evidence a case was made for the consideration of the jury. 2 N. Y. State Rep., 679. Upon the trial now under review the evidence relative to the character and safety of the machinery was substantially the same. After the evidence was closed the defendant moved for a non-suit upon the ground that upon the whole case the plaintiff had not made out a cause of action. This exception we shall pass, without examination, as it was considered upon the former appeal, and the case does not present any new feature, which induces us to change our opinion, that a case was made for the consideration of the jury. Exceptions were taken to a portion of the charge which require an examination.
The plaintiff insists that the machinery, as originally constructed, was defective and unsafe, and the negligence imputed tp the defendants is, that they did not use reasonable care in selecting the same and putting it in operation. It is a duty which the master owes to his servant to'use all reasonable care, diligence and caution in providing for the safety of those in his employ, and furnishing for their use in his work, safe, sound and suitable tools, implements, appliances and machinery, in the prosecution thereof, and keep the same in repair. Probst v. Delamater, 100 N. Y., 266: Benzing v. Steinway & Sons, 101 id., 547.
This duty of the master is not an absolute one and is satisfied by the use of reasonable care and prudence in the selection and repair of the machinery and appliances. This rule was fully and correctly stated to the jury by the learned trial judge and no other ground of liability was mentioned as the basis of the plaintiff’s right to a verdict. No exception was taken to this part of the charge by either party, nor was the judge requested to change or modify the same in any respect. The rods were exposed to view and their rigid position could be observed at a glance. Experienced mechanics and machinists testified upon the trial that in view of the manner the rods were attached and the lateral strain to which they were necessarily subjected the machinery was insecure and unsafe, and that crystalization of the iron would in some degree take place in consequence of the lateral strain.
It is obvious that an intelligent machinist, on making a *684 careful inspection of the machinery, would readily observe this defect in the construction, and note that the strength of the rods would be weakened in consequence of the strain placed upon the same. None of the witnesses pretended that the rods could not have been relieved of the strain in one of the ways already mentioned. If that had been done, no question is made but what the machinery would have been entirely safe and secure.
At the request of the plaintiff’s counsel, the court instructed the jury that if the witnesses Hagadorn and English were the general superintendents of machinery in the factory, and were empowered to provide and place in use the machinery or other material, means or appliances for the employees of the defendant, and had the general management and arrangement thereof, the defendants’ duty or contract with their employees was delegated to said superintendents, and any negligence on their part was the negligence of the defendants.
Hagadorn was not in the employ of the defendants at the time of the accident, and had not been for some time previous thereto, but English was in charge of the machinery at that time.
The defendant Otis seldom visited the factory, but the defendant Gorsline did, as a general custom, every day, making observations as to the conditions of the machinery, and giving instructions to the persons in charge during his absence. The mill in question and the machinery used in connection with its operation had been in use about fifteen months. English testified that he had charge of the machinery and was general superintendent of the shop, and had the general management and arrangement of the machinery in the mill, and it was his duty when the machinery was inadequate and imperfect, or out of repair, to put it in order according to his own judgment.
Hagadorn’s evidence was to the effect that while he was in the employ of the defendants he had charge of the machinery and apparatus connected with the running of the mills.
This evidence, in connection with the admissions of the defendant Gorsline as to the duties charged upon these persons, justified the jury in finding that the persons mentioned acted at times, in the absence of Gorsline, as the general superintendents of the machinery, authorized to make repairs and alterations if the same became necessary. If they were guilty of any negligence in operating and running the machinery it would be, in law, the negligence of the defendants, whose representatives they were while in charge of the factory.
The court then further charged the jury, at the plaintiff’s *685 request, that Hagadorn and English were clothed with the power and charged with the duty the defendants owed their employees, and they were not co-employees of the intestate, but each was the alter ego of the defendants. This part of the charge should be read in connection with the portions of the charge on this subject, which had been given to the jury. It is obvious that the last instructions of the jury were not to be acted upon by them, unless they should first find as a fact that Hagadorn and English were acting as the general superintendents of the factory, having charge of the machinery.
The counsel for the defendants then asked the court to charge the jury that Hagadorn and English, in the service they performed, in the duties in which they were employed, were the co-servants of the plaintiff’s intestate, and that the defendants were not responsible for their negligence, which the court declined to do, and the defendants excepted.
The deceased was a common laborer, and the duties which he was called upon to perform did not require him to give any care or attention whatever to the machinery.
There is no claim made by either party that the rod broke in consequence of any unskillful use and operation of the lever used to raise the friction wheel so as to throw the machinery connected with the mill in question out of gear. The defect, if any existed, was in the construction of the machinery, and the negligence imputed to the defendants was in not using ordinary care and caution in inspecting the same with a view of ascertaining whether it was safe and secure for the purposes for which it was being used. The duty which the defendants owed the deceased in this respect could only be discharged by a performance. The case does not present a state of facts from which it can be said that the injury to the deceased was caused by the negligence of a fellow servant.
The case was tried upon the theory that the machinery was defective in its construction, and for that reason it was insecure and unsafe, and ought not to have been put in operation, and that the negligence of the defendants consisted in not using ordinary care in inspecting the same, which, if it had been done, would have brought to their attention the defect complained of. Crispin v. Babbitt, 81 N. Y., 516; Probst v. Delamater, and Benzing v. Steinway, supra.
The family of the deceased consisted of his wife and three children under nine years of age, whom he supported by the avails of his daily labor. The plaintiff was permitted to state, as a witness in her own behalf, against the objections of the defendants, that she had no property, and that *686 the care of her children prevented her from engaging in service away from home, and that she and her children were supported by the public authorities. It was held in Lockwood v. The N. Y. L. E. and W. R. R. Co., (98 N. Y., 523), that it was competent to prove, in actions of this character, for the purpose of determining the pecuniary loss sustained by the next of kin, the character, qualities, capacity and condition of the deceased, and the age, sex, circumstances and financial condition of the next of kin. It has been held in other states that it is incompetent on the question of damages to make proof of the pecuniary condition of the next of kin. Since the decision of the case referred to .it is not permissible in this court to renew a discussion of the question. It does not seem probable that the jury could have been influenced to increase the amount of their verdict by the statement made by the plaintiff that she was supported by the poormaster, as the fact stated only emphasized her actual pecuniary condition. The exception taken to the admission of that evidence is not sufficient ground for granting a new trial.
Judgment and order affirmed.
Haight, Bradley and Dwight, JJ., concur.