committee could not compel him to pay the same over to plaintiff. A perfect answer to such a claim would be that the money belonged to him so far as the lunatic was concerned, and that he was not obliged to account for it to her or to her committee. If this plaintiff should be allowed to prevail in this action, it would be tantamount to compelling defendants to pay for property the title to which is still in the lunatic.

---

(18 App. Div. 520.)

CROWELL v. THOMAS.

(Supreme Court, Appellate Division, Fourth Department. June 12, 1897.)

1. MASTER AND SERVANT—DEFECTIVE APPLIANCES—PROVINCE OF JURY.
    In an action against a master to recover damages for the death of his servant, caused by the explosion of an apparatus for heating water used in his canning factory, it appeared that a change in the condition of the apparatus, which rendered it dangerous, was plainly open to observation, and might easily have been seen by the defendant's superintendent, who was present at and before the time of the accident. *Held*, that it was a question for the jury whether the superintendent should have observed the condition rendering the apparatus unsafe and unfit for use.

2. SAME—VICE PRINCIPALS—WHO ARE.
    A subordinate employé does not, by being placed in charge of a particular appliance used about his work, become the representative of the master, charged with the duty of seeing that reasonably safe and proper appliances are furnished, so as to render the master liable for injury to a co-employé, caused by his negligence in respect to the appliance in his charge.

Appeal from trial term, Monroe county.

Action by Daniel Crowell, administrator of the estate of Elizabeth Crowell, deceased, against Howard Thomas. From a judgment in favor of plaintiff for the sum of $4,892.81, entered after a trial by jury, and also from an order denying a motion for a new trial on the minutes, defendant appeals. Reversed.

The plaintiff brings this action to recover damages for the negligent killing of his daughter, Elizabeth Crowell. The evidence in the case shows that the defendant was the owner of a fruit-canning factory at Fairport, in the county of Monroe; that a large number of women and girls were employed in the factory during the canning season, some of whom were charged with the duty of filling the cans with hot or cold water, some with wiping the cans after they were filled, and others with filling the cans with fruit. The establishment was under the direct supervision and management of a former owner, one James K. Burlingame, who was the defendant's general superintendent. The plaintiff's intestate had worked in this factory during a part of the season of 1891, and also for two weeks in June and July, 1892, during the strawberry season, and again in August of the same year. Upon the 9th day of August she went to the factory at about 8 o'clock in the morning, to assist in canning black raspberries. The fruit to be canned did not arrive, however, until about 9 o'clock, at which time, in company with her co-employés, she commenced operations. In the room in which she was at work there was placed a table running lengthwise of the room, and upon which rested an ordinary whisky barrel. Connected with this barrel were two pipes, one of which was designed to conduct cold water into the barrel and the other steam from the boiler into the water for the purpose of heating the same. These pipes entered the barrel from the top, and in each pipe, at a point just above the top of the barrel, was a valve, by means of which the water and steam could be turned on and shut off. The steam pipe, where it entered the barrel, was about three-fourths of an inch in diameter. In the top of the barrel, back of the two pipes already described, was another

pipe, one inch in diameter, which was designed to allow the steam to escape from the barrel. Shortly after commencing work on the morning in question, the plaintiff's intestate was directed by the superintendent to attend to the barrel; that is, to turn the faucet in the barrel, and fill up the cans with hot water as they were brought to her partially filled with fruit. Soon after she had engaged in this particular occupation the barrel burst, and the steam escaping therefrom scalded her so severely that upon the 2d day of November following she died. It appears that when the water was turned into this barrel it frequently ran out through the discharge pipe in the top, to the annoyance of some of the employés who were engaged at work in that part of the room; and that in July previous to the accident one Llewellyn Burlingame, a nephew of the superintendent, who was also an employé of the defendant, complained of this fact to the engineer, Buckley; and to remedy the difficulty Buckley whittled a plug, which was inserted in the discharge pipe, for the purpose of preventing the overflow of water. This barrel, or one similar to it, had been used in the same manner for heating water for a number of years prior to the accident, and it is virtually conceded that its use for that purpose was not attended with any danger with the escape pipe open; but with the plug in the escape pipe the steam was confined to the barrel, and when in this condition there was danger of its bursting. Buckley was careful to instruct Burlingame never to use the plug when hot water was wanted, and to explain to him the danger of doing so. After the accident occurred, it was discovered that the plug was in the escape pipe, and that this unquestionably caused the explosion.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Horace McGuire, for appellant.
Charles Van Voorhis, for respondent.

ADAMS, J. Upon substantially the same evidence as that furnished by the record now before us, it was held by the late general term in the Fifth department that the case presented a question of fact respecting the defendant's negligence which should have been submitted to the jury; and because upon a former trial it was withheld from the jury, and a nonsuit directed, a new trial was ordered. Crowell v. Thomas, 90 Hun, 193, 35 N. Y. Supp. 936. This decision, while not necessarily conclusive upon this court, is nevertheless one which should not be lightly disregarded, and we are quite content to follow the same in so far as it holds that the question of defendant's negligence must be disposed of as one of fact, and not one of law. It is true that the contrivance which was employed by the defendant for furnishing hot water was an exceedingly simple one, and, when used in the manner originally designed, a perfectly safe one. It is likewise true that the insertion of a plug into the escape pipe, which converted a perfectly safe appliance into a dangerous one, was the act of a co-employé of the plaintiff's intestate, for which the defendant was in no wise responsible. And if these were the only facts to be considered upon this review, there would be great force in the contention that the defendant was not legally liable for the consequences of the explosion. Unfortunately, however, for this contention, there are some additional facts in the case which put quite a different aspect upon it. It is claimed, and there is some evidence tending to show, that James K. Burlingame, the defendant's superintendent and alter ego, might have prevented the accident, had he been diligent in the discharge of the duty of inspection,

which doubtless rested upon him. It appears that the steam had not been turned into the barrel since the strawberry season in June preceding the explosion, save on one occasion early in July. It also appears that as this barrel stood upon the table its top was about six feet from the floor; that the escape pipe extended some six inches above the top of the barrel, and the plug some four or five inches from the escape pipe. It is quite obvious, therefore, that the plug, when inserted, was in plain view of any one standing upon the floor; and one witness—Phillip Dougherty—testified that about a week prior to the accident he noticed the plug in the pipe. On the other hand, James K. Burlingame testified that he did not look for the plug, and that he had never seen it, or known that one was used. It may be assumed, therefore, that his attention was not expressly directed to any danger which might be anticipated from the improper use of this particular contrivance. Nevertheless, as the defendant's superintendent, he was undoubtedly charged with the duty of exercising some reasonable degree of diligence to ascertain whether this barrel, after remaining unused for such a length of time, was in a safe and proper condition for use on the morning in question. Egan v. Railroad Co., 12 App. Div. 556, 42 N. Y. Supp. 188. Did he, in this respect, discharge the full measure of the duty resting upon him? It is conceded that he turned on the steam the morning of the accident, and was standing near the barrel when it exploded, and that ample opportunity was thus afforded him to have seen this plug, had he but cast his eyes upon the discharge pipe. It is also argued that, if he had been at all mindful of the situation which confronted him, he would have noticed that no steam was escaping from the pipe, and that the barrel was affected by some unusual internal force. It is not denied that, had he seen the plug, he would have realized the increased danger which its presence in the pipe caused in time to have guarded against it, and yet he did not observe it. The crucial question, therefore, which the case presents is whether, in the peculiar circumstances which have been detailed, he ought to have observed it, and was he guilty of negligence in failing to do so? This is a question concerning which persons of equally good judgment might differ in their answers, and therefore we think it one which was very properly submitted to the jury for their determination, and that their verdict should consequently not be disturbed. But, while satisfied with the disposition made of this question at the trial, we are constrained to reverse the judgment and order appealed from and to direct a new trial for errors which are presented by exceptions taken to certain portions of the charge of the court. The jury were instructed that James K. Burlingame stood in the place of the defendant, and that for any omission of duty upon his part the defendant was liable. Thus far the learned trial justice was undoubtedly correct in his statement of the law applicable to the case; but this statement was followed by another, which we think must have conveyed an erroneous impression to the minds of the jury, and one which was quite prejudicial to the defendant's rights. This was, in effect, that by placing either Buckley or Llewellyn Burlingame in charge of this barrel

and its appliances, James K. Burlingame delegated to them the same
authority to represent the defendant as he himself possessed.    That
there may be no misapprehension in respect to this feature of the
case, we quote from the body of the charge the following language:

"I also charge you, gentlemen, if you should find from the evidence that if
Mr. Burlingame directed Mr. Burke, the engineer [meaning, doubtless, Mr. Buck-
ley], to take charge of the pipes and machinery, and if he put the plug in the
pipe knowing, or if he had reason to believe, it was dangerous to turn on steam
while the plug was in the escape pipe, and neglected to remove it, then the
defendant would be liable.    I also charge you, gentlemen, if you find from the
evidence that Mr. Burlingame intrusted his brother [meaning Llewellyn Bur-
lingame] with the management of this part of the machinery, or the barrel
where the explosion took place, and that his brother stopped up the escape pipe,
—that is, if he did it acting under the directions and instructions of Mr. Bur-
lingame, who was the superintendent in charge,—and you find from the evi-
dence that it was a negligent act, and that it was an act that a man of reason-
able prudence and caution ought to have known the effect the steam would
have upon this barrel with a plug in the escape pipe, and he omitted to remove
the plug, then he would be guilty of negligence, and his act would be the act
of the employer; or, in other words, his act would be the act of the defendant."

When this was excepted to by the defendant's counsel, the learned
court further stated that he "left it to the jury to determine from the
evidence whether Mr. Burlingame had charge of this machinery,
whether he had charge of the employment and discharge of the serv-
ants, and, if he did, and had charge of this machinery, and directed
some one to take charge of it, and that person put the plug in this
pipe, and knew or ought to have known the effect that it would have
upon the barrel in case the steam was turned on when the plug was
in the pipe, and that was a negligent act, then it was the act of the
master."    And later on, when requested to charge that any act of Mr.
Buckley's in interfering with the machinery which had been furnished
by the master, in the way of putting this plug in the pipe, if he did
put it in, would be the negligence of a co-employé, for which Mr.
Thomas would not be liable, he added: "That would be so, gentlemen,
unless you find from the evidence that he was directed to take charge
of it by Mr. James K. Burlingame,"—to all of which the defendant's
counsel duly excepted.    Thus it will be seen that the jury were per-
mitted to find that the defendant was liable for the act of either
Buckley or Llewellyn Burlingame in placing the plug in the discharge
pipe, provided either one did so after having been placed in charge
of the barrel by the superintendent.    It seems to us that the proposi-
tion involved in the instructions of the learned court to which atten-
tion has been made is clearly fallacious in at least two respects.
In the first place, the case is destitute of any evidence whatever tend-
ing to show that Buckley was ever placed in charge of this barrel.
He was the defendant's engineer, and his share of the responsibility
for the accident which resulted from the improper insertion of this
plug was voluntarily assumed by him without any direction from, or
knowledge of, the superintendent.    So far as Llewellyn Burlingame is
concerned, it is undoubtedly the fact that he had more or less to do
with the barrel in the performance of the services which were required
of him.    But it does not appear that he was ever called upon to
exercise any supervisory duty in respect thereto which changed his

relation from that of a servant to the alter ego of his master. Assuming, however, that the duty was imposed upon either or both of these persons to look after the barrel, and to see to it that it was safely and properly operated, this was but a mere detail of the business in which they were engaged, which by no means clothed them with the general powers and responsibilities of the master; but, on the contrary, they still remained co-servants of the plaintiff's intestate. And it follows that, if either of them inserted the plug, and carelessly omitted to remove it, or if they or either of them failed to observe that the steam was prevented from escaping by the presence of the plug, the act or omission, however negligent it may have been, was the act or omission of a co-servant, for which the master was in no wise responsible. Crispin v. Babbitt, 81 N. Y. 516; Loughlin v. State, 105 N. Y. 159, 11 N. E. 371; Vitte v. Keogan, 15 App. Div. 329, 44 N. Y. Supp. 1. A different rule, we are persuaded, would work a radical change in the law of negligence; for there is scarcely a manufacturing establishment in the country in which various employés are not placed in charge of certain portions of the machinery in use. It is the duty of the engineer to take charge of his engine, and see to it that it is properly managed; and if, owing to his mismanagement, an explosion results, by which another operative is injured, such omission or duty is not chargeable upon the common master. Crispin v. Babbitt, supra. In like manner, if a switchman leaves his switch open, in consequence of which a train is derailed, and the fireman upon a locomotive is killed, the fact that the switchman was placed in charge of the switch does not change him from a servant to a master; but, like the engineer in the case first mentioned. he retains the relation of a co-employé. Harvey v. Railroad Co., 88 N. Y. 481. It is hardly necessary, however, to multiply illustrations, nor will it prove profitable to further discuss the question under consideration. It is sufficient to say that for the errors which we have attempted to point out we think a new trial is rendered necessary, and to that end that the judgment and order appealed from should be reversed.

Judgment and order reversed, and a new trial granted, with costs to abide the event. All concur.